THE STATE OF OHIO, APPELLEE, *v.* DANIELS, APPELLANT.

[Cite as State *v.* Daniels (1982), 1 Ohio St. 3d 69.]

(No. 81-1815—Decided July 21, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Allan Levenberg,* for appellee.

*Ms. Kathleen O'Connell Burton,* for appellant.

CELEBREZZE, C.J. The focal point of this case is the following pertinent language of Crim. R. 16 (B)(1)(g):

"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an *in camera* inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney *present and participating,* to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement." (Emphasis added.) See, also, *State* v. *White* (1968), 15 Ohio St. 2d 146 [44 O.O.2d 132].

Appellant contends that the phrase *"present and participating"* means that defense counsel must be physically present at the judge's *in camera* inspection and be afforded the opportunity to review the statement personally for perceived inconsistencies. Appellant argues that this procedure is required because the prosecuting attorney and defense counsel "have spent hours examining the evidence and preparing witness, they alone can understand the nuances among an omission, an inconsistency and a misstatement."

Appellee, on the other hand, submits that Crim. R. 16 (B)(1)(g) merely requires that defense counsel be present and available for consultation with the trial court during the *in camera* inspection of the witness' statement.

As defined in Webster's Third New International Dictionary, "participate" has a straightforward, unambiguous meaning: "to take part in something (as an enterprise or activity) usually in common with others." See, also, *Martin* v. *Mutual Life Ins. Co. of New York* (1934), 189 Ark. 291, 71 S.W. 2d 694 (participate "means to take part in" and connotes to the average person the meaning and effect of "engaged in" rather than mere presence).

We construe Crim. R. 16 (B)(1)(g) to mean that, once the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties must be given the opportunity to inspect the

statement personally. The trial court's simply permitting the attorneys to be passively present and available for consultation during the *in camera* inspection constitutes reversible error.

This procedure will ensure meaningful participation by all attorneys in reviewing the statement and will assist the trial court in evaluating whether there are inconsistencies between the testimony of such witness and the prior statement. As the court noted in *Columbus* v. *Bee, supra,* at 78: "An advocate is frequently in a better position than the court to spot inconsistencies, being much more familiar with the entire case. Thus, the advocate is able to intelligently argue that matter prior to the court's ruling."

Furthermore, as the Court of Appeals in the case *sub judice* keenly observed: "We understand this language to intend that the defense lawyer shall have the right to call to the attention of the court any inconsistencies existing between the testimony of the witness and his statement. Any lesser procedure would deprive the court of any suggestions of counsel for the defendant with respect to the substantiality of inconsistencies. Otherwise, in most instances, the trial court would be required to depend on his own recollection of the complete testimony of the witness in hindsight. Understandably, the court could fail to recall portions of that testimony. Although it may be argued the court may have the luxury of a court reporter rereading to him all or part of the testimony of the witness, this is not practicable nor does it afford defense counsel an opportunity to truly participate in the court's decision as to inconsistencies. Such a result is not contemplated by the rule itself or the adversary procedure in general."

Therefore, we conclude that, under the facts at bar, the trial court's failure to afford defense counsel the opportunity to inspect the witness' statement personally and call to the court's attention any perceived inconsistencies constitutes reversible error *per se.*[3]

Accordingly, for all the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. Brown, Sweeney and C. Brown, JJ., concur.
Holmes, J., concurs in part and dissents in part.
Locher and Krupansky, JJ., dissent.

Holmes, J., concurring in part and dissenting in part.

---

[3] We concur with the Court of Appeals' conclusion that the trial court's failure to furnish defense counsel with the statement was not harmless error. We have reviewed the pretrial statement and the in-court testimony of Gregory Wilson and find that there are inconsistencies pertaining to Wilson's observations and recollection of the events which transpired on August 19-20, 1979.

I concur with the majority that the more reasonable interpretation of Crim. R. 16 (B)(1)(g) would be that the trial judge first independently determine whether a producible out-of-court statement exists, and if it is determined that such a statement exists, then defense counsel, along with the judge and prosecutor, should actually inspect the same to determine any substantial inconsistencies. I would conclude that this is the only reasonable manner in which the defense counsel, as well as the state's counsel, may have a meaningful participation in the *in camera* inspection. With the benefit of the commentary of both the prosecution and the defense, the trial judge would be in much better position to determine whether or not there are any inconsistencies between the statement and the testimony. Pursuant to this procedure, the judge may still be in charge, since the judge delivers only that portion of the statement which he determines to be inconsistent. The remainder may be secured, and counsel given appropriate prohibitory orders.

However, in this case, based upon the known facts presented to the Court of Appeals, and to this court, I would affirm the judgment of the Court of Appeals. An examination of Wilson's in-court testimony relative to his written statement reveals, and convinces me, that there are no material inconsistencies between the two. Additionally, even though, as found by the Court of Appeals, there was an omission in such testimony, as compared to the out-of-court statement, the omission was of such a character as to not reach a substantial nature. There was not a denial of a fair trial, nor was the due process of the defendant transgressed. The error, if any, was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183 [14 O.O.3d 416]. Even more significantly, as pointed out by Justice Krupansky in her dissent, the subject matter of the omission—that of the sex propensities of the witness—would not have been admissible for purposes of discrediting this witness in any event.

The error being harmless, I would therefore affirm the judgment of the Court of Appeals, and accordingly dissent from the judgment of the majority.

KRUPANSKY, J., dissenting. The majority opinion defines "present and participating" in Crim. R. 16 (B)(1)(g) as requiring the court upon the granting of defendant's motion for an *in camera* inspection of the prior out-of-court statement to permit the attorneys for all parties to: (1) personally inspect the statement and (2) call to the court's attention any inconsistencies between the testimony and the prior out-of-court statements prior to the court determining whether any inconsistencies exist. I disagree with the majority's interpretation of "present and participating," and therefore, I must respectfully dissent.

It is the function of the court to interpret the rules as written, not to defeat the intent of the rule by spotlighting one phrase out of context. Therefore, I believe Crim. R. 16 (B)(1)(g) should be read in its entirety,

digested and then construed in light of its whole meaning; not dissected and the one phrase "with the defense attorney and prosecuting attorney present and participating" elevated and emphasized over the other portions of the rule. Accordingly, I have set out the rule in its entirety below.

Crim. R. 16 (B)(1)(g) provides:

"Upon completion of a witness' direct examination at trial, *the court* on motion of the defendant *shall conduct an in camera* inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If *the court determines that inconsistencies* exist, the statement *shall be given to the defense attorney* for use in cross-examination of the witness as to the inconsistencies.

"If *the court determines that inconsistencies do not exist* the statement *shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.*

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal." (Emphasis added.)

It is obvious the rule puts *the court* in charge of conducting the *in camera* inspection. It is equally obvious the rule puts *the court* in charge of making the determinations as to whether inconsistencies do or do not exist. The rule also unequivocally grants *the court* the prerogative of giving the witness' statement to the defense attorney or withholding the statement *after the court* makes the determination as to whether inconsistencies are present.

In my opinion, an interpretation of the first paragraph of the rule is as follows: Once the defendant makes the motion for the *in camera* inspection the court takes charge. The language is mandatory, *e.g.,* "* * *the court * * *shall conduct an in camera inspection * * *" with the defense attorney and prosecuting attorney present and participating." The presence and participation of the attorney is to aid and assist the court in its determination as to whether inconsistencies exist. The rule definitely gives the court the dominant role; *i.e.,* the court leading a meaningful discussion with the attorneys present and participating. Nowhere does the rule even hint that the defense attorney should make the determination of whether there are inconsistencies present between the witness' statement and the witness' testimony. The majority opinion elevates defense counsel above the court and permits defense counsel to make the determination as to whether there are inconsistencies. The majority by its decision usurps the position of the trial court, relegates the trial judge to a position of inferiority and permits defense counsel to call the shots. I am greatly saddened by the fact the majority feels our trial judges are incapable of determining inconsistencies when they have just heard the testimony and have the prior statement of the witness before them with which to compare it. To me it is obvious the rule dictates the trial judge review this prior out-of-court statement in order that he might render a fair, impartial and unbiased

decision on whether inconsistencies exist, rather than having defense counsel review the statement with a partial and biased eye. In short, the majority opinion is entirely out of focus and defeats the clear meaning of the rule.

Assume *arguendo,* we accept what the majority advocates, *i.e.,* defense counsel is entitled to see a witness' prior statement before the court has had the opportunity to determine if inconsistencies are present. What then is the purpose and meaning of the last three paragraphs of the rule? Paragraphs two and three of the rule are written in clear, unambiguous language and are self-explanatory. The last paragraph dictates the procedure to be followed when only that portion of the witness' statement which is inconsistent with his testimony is given to defense counsel. Essentially, these three paragraphs are rendered meaningless by the majority's holding since defense counsel would have already seen the entire statement.

While I would concede the court, in exercising its discretion, may allow defense counsel to see the witness' statement when a close question on consistency arises, this procedure should be used only when *the court* has already made a determination on consistency.

The rule is aimed at achieving justice by discrediting or impeaching a dishonest witness; however, it is important the procedure is not used to embarrass or humiliate an honest witness, or as a tool for defense counsel to embark on a fishing expedition. Clearly, the procedure as advocated by the majority is subject to abuse by defense counsel. While the court can retaliate with a contempt citation against abusive counsel, such a sanction pales when one considers the injustice which would result if a guilty defendant were released as a result of such abuse.

As well as disagreeing with the majority's interpretation of Crim. R. 16 (B)(1)(g), I am also troubled by several other aspects of the majority opinion. The majority states that after a timely motion for an *in camera* inspection of Wilson's statement by defense counsel, "[t]he trial court alone * * * reviewed Wilson's statement without making it available to defense counsel * * *." The majority continues, "[a]t no time was defense counsel permitted to participate in this *in camera* inspection or to use the statement for cross-examination or impeachment purposes."

Initially one must recognize there is no requirement in the rule that the entire *in camera* proceeding be placed on the record. Oftentimes the court will place only the *results* of the *in camera* inspection on the record. Such is the case herein. In the instant cause the trial transcript clearly reveals the court did conduct an *in camera* inspection with defense counsel present and participating to the extent defense counsel was fully aware of the contents of Wilson's out-of-court statement.[4] On pages 356-357 of the record, for example, the following exchange appears:

"Mr. Sheehan [the defense attorney]: The defense would make a motion

---

[4] It is interesting to note at the outset that defense counsel never objected to being denied the right to participate in an *in camera* inspection.

for an *in camera* inspection of the statement of the witness Gregory Wilson.

"The Court: The Court finds the written statement has no inconsistency with the testimony of the witness.

"* * *

"The Court: Have you excepted to the Court's finding that it is not inconsistent?

"Mr. Sheehan: *I accept the fact there are no inconsistencies*. I find there were certain *things left out*, but that is something I will address myself to when I ask him what really happened."[5] (Emphasis added.)

It is difficult to imagine a much more explicit acknowledgment by defense counsel that he had inspected Wilson's prior statement. Defense counsel not only knew there were no inconsistencies in the statement when compared to the testimony, but he also knew the testimony had "things left out" which were in the statement. The prosecutor did not examine Wilson on certain aspects of Wilson's statement because of the prohibition contained in R.C. 2907.02(D). The above exchange seems to cast serious doubts upon the majority's contention that defense counsel never was permitted to inspect Wilson's statement.

These doubts are intensified by the discussion which took place the following day concerning Wilson's out-of-court statement, which occurred between court and counsel out of the hearing of the jury:

"Mr. Levenberg [the prosecutor]: Your Honor, I believe if the Court would take this opportunity to review the statement on its own, again, even after having reviewed it yesterday, the Court would find that there is absolutely no discrepancy between what the witness is currently testifying to and the way the statement reads. * * *

"The Court: I want the statement and I want it up here now. I just want it. I am going to keep it.

"First of all, *both counsel have indicated discrepancies, and the rule is inconsistencies*. * * * *[T]he Court finds no inconsistency whatsoever in this testimony on direct examination as with respect to the statement which the Court reviewed with counsel* * * * and the Court is going to object on its own motion to any questions that are asked with reference to this statement because there are no inconsistencies. The Court finds no inconsistencies." (R 418-419)

The "discrepancies" which the court refers to and the "things left out" alluded to by the defense attorney, center on the possibility that the witness, Wilson, was a homosexual. Specifically, there is a portion of Wilson's statement which relates the following:

---

[5] When reading the transcript it is obvious what defense counsel is referring to when he states, "there were certain things left out, but that is something I will address myself to when I ask him what really happened." From this statement, read in context, it is obvious defense counsel either personally read Wilson's prior out-of-court statement or was fully informed of its contents. This issue will be more fully addressed later in the opinion.

"The dude with the gun [Daniels], asked who was the homosexual here, and who wanted to give him a head job.[6] No one replied, he made the statement I'm not gonna ask the same question again and if someone doesn't volunteer I'm gonna blow you all away. He pulled the trigger back on the gun at that time, that's when I got nervous and said, *apparently you're talking about me.*" (Emphasis added.)

Seemingly relying upon the innuendo in the above-quoted statement that Wilson is a homosexual, the defense attorney proceeded to attempt to elicit a confession from Wilson that he is a homosexual. Defense counsel's purpose, so he said, in pursuing this avenue was to impeach Wilson's credibility as a witness. That this was defense counsel's intent is explicitly revealed by the following colloquy which took place in the trial court:

"*By Mr. Sheehan:* [to Gregory Wilson]

"Q Did you finally perform the act? [oral sodomy on the defendant]

"A Yes.

"* * *

"Q Was the act that you were being requested to perform repulsive to you?

"A Very.

"Q Why was it repulsive to you?

"Mr. Levenberg: Objection, your Honor.

"The Court: Sustained.

"Mr. Sheehan: Your Honor, can we approach the bench?

"* * *

"The Court: I don't want any more of these questions. What do you want him to say, that he is a homosexual?

"* * *

"Mr. Sheehan: There is independent evidence produced before the prosecutor that will show that this witness is a practicing homosexual and I maintain that such testimony in evidence is fit for the jury to hear and to use in considering his credibility and that since the prosecutor has introduced this evidence himself, why, I cannot question this man, this witness as to what transpired both in that room and in his mind?

"Mr. Levenberg: If I may be heard I would draw the Court's attention to Section 2907.02[7] of the Ohio Revised Code captioned rape, which is the seventh count of the indictment which is what counsel is going to. I specifically draw the Court's attention to subparagraph D which reads as follows—

---

[6] Wilson is using the term "head job" to refer to oral sodomy.

[7] R.C. 2907.02(D) provides in relevant part:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

"The Court: Evidence of specific instances of the victim's sexual activity, reputation evidence shall not be admitted unless it involves evidence of the origin of semen, pregnancy or disease or the victim's past sexual activity—and only to the extent that the Court finds that evidence is material to a fact in issue in the case *and that its inflammatory or prejudicial nature does not outweigh its probative value.*

"* * *

"The Court: I am not going to allow it, period. I am sustaining the objection to the question and I am not going to allow any questions about homosexuality to prove—to attack—what do you want to attack, his credibility?

"Mr. Sheehan: Yes, your Honor, his credibility. Yes sir, that is right, his credibility, yes, sir."

It is obvious defense counsel wanted to discredit Wilson's testimony simply because Wilson may have been a homosexual and not because he was lying or making inconsistent statements. The court then, in a very pointed statement, replied depicting the fact that even homosexuals or prostitutes have the right to choose with whom and how they have sex. The court replied as follows:

"The Court: Just because this could have been a prostitute in there who was forced to suck this guy off, you think because she is a prostitute she doesn't have the right to choose whose cock she wants to suck?"

It is clear, therefore, the defense attorney was thoroughly familiar with the contents of Wilson's prior statement and that he intended to use that information to embarrass and humiliate Wilson rather than to impeach his credibility. As unreservedly pointed out by the trial judge, according to R.C. 2907.02, such evidence is inadmissible unless explicitly allowed under that section, and then only to the extent that it is material and its probative value outweighs its inflammatory or prejudicial nature. The witness' sexual preference is in no way relevant to any issue in the instant action. An individual is entitled to be free from sexual assault regardless of his personal sexual preference. Likewise, an individual testifying in a criminal proceeding should not be forced to endure humiliating treatment at the hands of defense counsel simply because he may be a homosexual. Once again, I must emphasize the fact whether Wilson is or is not a homosexual is not material to any issue in this cause, and therefore, is clearly inadmissible under R.C. 2907.02(D). The defense attorney's attempted use of Wilson's prior out-of-court statement plainly exhibits one of the dangers inherent in allowing defense counsel to inspect a statement which is free of inconsistencies.

In addition to the above, I am also bothered by the majority's failure to specifically delineate the precise inconsistencies which allegedly exist. Indeed, I find it very perplexing the only assertion by the majority that inconsistencies do exist is in a footnote. Even in the footnote the reference is to a mere "inconsistency" and not to a "material" or "substantial" inconsistency. See *State* v. *White* (1968), 15 Ohio St.2d 146 [44 O.O.2d 132]. It seems such an im-

portant aspect of this case, *i.e.,* whether inconsistencies do or do not exist, should be dealt with in a more thorough manner.

After diligently searching the record, I have failed to uncover what I would label an "inconsistency." There are minor deviations in Wilson's choice of words when he is describing what transpired, however, these certainly do not rise to the level of being an inconsistency.[8]

In sum, a thorough reading of the trial court transcript clearly reveals that either: (1) defense counsel saw the witness' prior statement at some time before the *in camera* inspection; or (2) defense counsel was present and participating at an *in camera* inspection conducted by the court which included a meaningful discussion between the court and counsel, when the court concluded no inconsistencies existed in Wilson's prior statement; or (3) defense counsel was present and participating at an *in camera* inspection conducted by the court, when the court permitted the attorneys to actually inspect the prior statement.

I am in total agreement with the trial judge's conclusion that no inconsistencies exist. Therefore, although I believe the trial judge *did* permit defense counsel to inspect Wilson's prior out-of-court statement, in view of the court's determination that no inconsistencies were present I do not feel such an inspection was mandatory under Crim. R. 16 (B)(1)(g). Furthermore, I have no doubt that the trial court complied to the letter and spirit of Crim. R. 16 (B)(1)(g) in conducting its *in camera* inspection.

Accordingly, I would hold the trial judge acted properly in denying defense counsel access to Wilson's prior out-of-court statement pending an initial determination by the court on whether the statement contained inconsistencies.

I would, therefore, affirm the Court of Appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.

---

[8] For example, in Wilson's out-of-court statement, he refers to the defendant's command that he, Wilson, perform oral sodomy on the defendant in the following manner: "He [the defendant] * * * stood up and pulled down his pants and instructed me to give him a *head job,* which I did." (Emphasis added.) In his testimony Wilson referred to this same act as a "blow job." Admittedly, this substitution of terms could be labeled a discrepancy. However, is this the type of "inconsistency" which the majority is relying upon in remanding this case in order to conduct a new trial?