OPINION
The following appeal arises from a decision of the Geauga County Court of Common Pleas with respect to the partition of 94.54 acres of real estate with frontage on Hotchkiss Road and Rider Road in Butler Township, Geauga County, Ohio. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
This matter began as two separately filed cases. On December 9, 1992, Lawrence B. Hotchkiss filed a complaint (case number 93 Mont. 000627, 98-G-2124 on appeal) seeking to divide the aforementioned property that he owned, as tenant in common, with appellants, Mae McMillian and Sherri Treebey ("appellants").[1] Mr. Hotchkiss later sold the property to appellee, Haueter Construction Co. who intervened in the action and was substituted as party plaintiff. On August 5, 1993, appellants filed a complaint (case number 92 Mont. 000964, 98-G-2125 on appeal) against appellees, Donald Haueter and Haueter Construction Co ("appellees") for past rent and an accounting for raw materials allegedly removed from the property. Although these two cases were not formally consolidated by the trial court, the various settlement negotiations, hearings, and proceedings for both cases were handled jointly by the court and the parties.
 On April 22, 1994, the parties filed a "Notice and Judgment Entry of Dismissal With Prejudice" referencing a settlement agreement they had reached with respect to both cases. Pursuant to the agreement, appellees were to pay appellants $2,500 and the property was to be split such that appellants would receive approximately 30.53 acres with appellees retaining the remainder of the real estate. While no formal survey of the property was completed at this time, the parties, working with a tax map (Exhibit "A"), had agreed that appellants would receive 1,400' of frontage on Rider Road, representing the eastern edge of the proposed 30.53-acre split. The northern boundary of appellants' property would consist of a 950' line perpendicular to Rider Road with the western edge consisting roughly of a parallel line 950' away from Rider Road. The proposed 30.53-acre split was to approximate a rectangle, however, the southeastern edge of the property appellants were to receive followed the eastern boundary of property owned by one "B.J. Whittaker." Pursuant to the tax map used by the parties, appellants were to retain the original parcel's entire frontage on both sides of Hotchkiss Road, a roadway crossing diagonally through the southern end of the proposed 30.53-acre split.
Following the dismissal of the case, a survey and general warranty deeds were prepared by appellees to effectuate the transfer of property. However, a dispute arose as to the exact dimensions of the property appellants were to receive. According to the survey, appellants were scheduled to receive only 29.9704 acres of land and the parcel did not abut on the southwest corner of property owned by "B.J. Whittaker" as previously represented in Exhibit "A." Instead, appellants parcel more closely resembled a 1400' by 950' rectangle with appellees retaining a sliver of property that would allow access to Hotchkiss Road. As the survey did not comport with the map as set forth in Exhibit "A," appellants refused to accept appellees' survey of the property and would not sign the general warranty deeds generated by appellees. In addition, appellants questioned a proposed setoff, equating to $2,500, that appellees claimed they were entitled in order to recoup expenses paid to transfer the property.
On June 27, 1997, appellees filed a motion to enforce the terms of the parties' settlement agreement. On November 12, 1997, the court held an evidentiary hearing on appellees' motion. At this hearing, the parties' attorneys testified as to the terms of the agreement. The parties' dispute centered on specific terms found in a letter generated by appellees' counsel and dated March 29, 1994. The letter, in pertinent part, provided for the following:
 "This will recount our various conferences * * * [regarding] the settlement [of these two cases:]
 "1. Payment by [appellees] to [appellants] in the amount of $2,500.00.
 "2. Conveyance of property, by Warranty Deed, to [appellants], as is generally depicted and set forth in the attached diagram [Exhibit "A"] and comprising approximately 30.53 acres. The particulars of this conveyance, however, require such parcel to be defined as no more than 1400' from the southeasterly most point of the property in question proceeding northerly along Rider Road, and from thence 950' in a westerly perpendicular line, and from thence in a [southerly] perpendicular line and then along the easterly property line labeled "BJ Whitaker" [sic].
 "3. Conveyance, by Warranty Deed, of the balance of the property in question to [appellees] by [appellants].
"* * *
 "5. All costs and fees associated with the transfer of this property shall be divided equally, fifty (50%) percent by [appellees] and fifty (50%) percent by [appellants]. Including but not limited to the costs of survey, any Deed and title work, etc. * * *."
Based on the terms of the agreement, it is apparent that the parties believed that the 1400' by 950' parcel of land to be conveyed to appellants would abut the eastern property line labeled "B.J. Whittaker" as set forth in Exhibit "A." However, after the formal survey of the property had been completed, the 1400' by 950' parcel did not conform with this belief.
At the hearing, appellees acknowledged that the tax map used throughout the parties' negotiations was not to scale and that the shape of the parcel appellants were to receive after the survey was conducted did not match the shape of the real estate as depicted in Exhibit "A." However, appellees argued that the parties knew they were dealing with approximations and asserted that appellants, when dealing with the "particulars" of the agreement, received exactly what they bargained for: a parcel "no more" than 1400' by 950'. Appellees requested that the trial court enforce the parties' agreement in accordance with the formal survey they had performed on the property.
Appellants argued that the formal survey submitted by appellees did not comport with the parties' intentions. Appellants asserted that appellees were attempting to cheat them out of approximately one-half acre of property as well as the portion of land that was to abut the property owned by "B.J. Whittaker." Appellants argued that the survey should be redrawn to more closely resemble the shape of the land as depicted in Exhibit "A."
As to the payment of fees associated with the transfer of property, appellees' counsel alleged that they were billed well over $5,000 for such costs. Pursuant to the parties' agreement to split these costs, appellees' counsel argued that appellees were entitled to a set-off from the $2,500 they agreed to pay appellants in paragraph one of the March 29, 1994 settlement. While appellees' counsel believed that these fees were paid, no evidence was presented evidencing that payment of the fees had, in fact, been made.
By judgment entry filed December 8, 1997, the trial court held that the terms of the parties' agreement were sufficiently definite to permit enforcement of the contract. The trial court granted appellees' motion to enforce and held that the survey and property descriptions submitted by appellees properly reflected the parties' intent as spelled out in their settlement agreement of March 29, 1994. The court further held that appellees were not required to pay appellants $2,500 for the property as this sum of money was set-off by expenses previously paid by appellees. From this judgment, appellants filed timely notices of appeal as to both actions. Following the issuance of a nunc pro tunc judgment entry correcting some clerical errors in its prior entry, and a consolidation of appellants' two appeals for all purposes by this court, appellants now present the following assignment of error for our review:
 "The trial court erred to the prejudice of [appellants] in granting [appellees'] motion to enforce."
 Within their sole assignment of error, appellants raise two issues: 1) the trial court's acceptance of the survey prepared by appellees despite the conflict with the boundary that had been agreed to by the parties as shown in Exhibit "A"; and 2) the trial court's decision to charge appellants with one-half of the expenses associated with transferring the property.
The first issue presented in appellants' assignment of error concerns the parties' intent with respect to how the 95.54 acres would be divided between them. The parties' arguments on this issue are identical to those raised below. To recap, appellees focused on the "particulars," 1400' by 950', and asserted that appellants received such a parcel of land. Appellants asserted that they were cheated out of one-half of an acre and that the parcel's boundaries failed to include those lands abutting the eastern portion of property belonging to "B.J. Whittaker" as set for in Exhibit "A." As previously noted, the letter provided that the property would be split as follows:
 "2. Conveyance of property, by Warranty Deed, to [appellants], as is generally depicted and set forth in the attached diagram [Exhibit "A"] and comprising approximately 30.53 acres. The particulars of this conveyance, however, require such parcel to be defined as no more than 1400' from the southeasterly most point of the property in question proceeding northerly along Rider Road, and from thence 950' in a westerly perpendicular line, and from thence in a [southerly] perpendicular line and then along the easterly property line labeled "BJ Whitaker"
[sic]. (Emphasis added.)
 While the "particulars" of appellees' survey provide for a 1400' by 950' parcel of land to appellants, as adopted by the trial court, these "particulars" do not account for the fact that the agreement also provides that the parcel is to run "along the easterly property line labeled `B.J. Whittaker.'" We are aware that the term "along" does not necessarily mean "touching." See Black's Law Dictionary (6 Ed. 1990) 77. However, upon a review of the entire record, it is apparent that the parties intended that the southwestern portion of appellants' property would abut the far eastern edge of property belonging to one "B.J. Whittaker." Indeed, a few days before the creation of the final settlement agreement, appellants' counsel sent appellees' counsel a facsimile stating that appellants "truly believe that the proposal on the table * * * included both sides of Hotchkiss Road." This belief was further buttressed by further correspondences, including Exhibit "A," that showed appellants' parcel of land abutting the far eastern edge of "B.J. Whittaker['s]" property.
In Alligood v. Proctor Gamble Co. (1991), 72 Ohio App.3d 309,311-312, the Hamilton County Court of Appeals set forth the following elements of a valid contract:
 "It is basic contract law that to have an enforceable contract, there must be a meeting of the minds of the parties to the contract.
 Noroski v. Fallet (1982), 1 Ohio St.3d 77, * * *. A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term. See Mr. Mark Corp. v. Rush, Inc. (1983), 11 Ohio App.3d 167, * * *; 18 Ohio Jurisprudence 3d (1980), Contracts, sections 17 and 140. If it can be determined that the parties intend to be bound, a court may fashion less essential terms that were omitted, in order to reach a fair and just result. Litsinger Sign Co. v. American Sign Co. (1967), 11 Ohio St.2d 1, * * *.
"However, the Ohio Supreme Court has stated that:
 "`It is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, "making a contract for the parties," no enforceable obligation results.' Id. at 14, * * *." (Parallel citations omitted.) See, also, Conley v. Lindsay Acura (1997), 123 Ohio App.3d 570.
 Applying the foregoing, we hold that the trial court erred in enforcing the parties' "agreement" of March 29, 1994. Quite simply, there was no "meeting of the minds" with respect to the exact dimensions of the parcel of land to be conveyed to appellees. Both parties proceeded through negotiations under the mistaken belief that a 1400' by 950' parcel of land would include property abutting that of "B.J. Whittaker." As previously discussed, these were two of the "particulars" of the parties' contract. On the basis of appellees' survey, it is impossible for any court to give meaning to both of these terms without significantly rewriting the parties' agreement. Consequently, the trial court erred in enforcing the parties' "agreement" of March 29, 1994. Appellant's sole assignment of error has merit.
 Because this court has determined that there was no valid contract entered into between the parties, appellants' arguments with respect to the proposed set off of fees is rendered moot. Based on the foregoing, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
 ___________________________________ JUDGE WILLIAM M. O'NEILL
NADER, P.J., dissents, O'NEILL, J., (Joseph), Ret., Seventh Appellate District, sitting by assignment, concurs.
[1] By judgment entry filed January 18, 1994, and on the parties joint motion, appellant, Holli Hotchkiss, was also named as a new party to the actions leading to this appeal.