OPINION
Defendant-appellant, Andre D. White, appeals his conviction in the Warren County Court of Common Pleas for assault. For the reasons that follow, we affirm the trial court's decision.
Appellant was an inmate at Warren Correctional Institution ("WCI"). Following an altercation between appellant and Sharon McPherson, a corrections officer, appellant was indicted on charges of assault and gross sexual imposition. At trial, McPherson testified to the following:
McPherson was working during the second-shift at WCI on January 2, 2000. Appellant resided at pod 2-C, which McPherson supervised. During "pill call," appellant approached McPherson and said that he wanted to talk to her about a "shank."[1] Because appellant was not supposed to be there at that time, McPherson asked him return to his cell block. She told him that she or another officer would talk to him at a later time.
About twenty minutes later, McPherson returned to pod 2-C. McPherson walked to a water fountain to fill a cup with water for coffee. She unlocked a door to enter a hallway that was a restricted area. Near the entryway to the hallway was a porter closet filled with mops, water, and cleaning supplies for the inmates to use to clean their cells. When McPherson walked by this closet, she had noticed an inmate inside but did not stop to identify him. There was a microwave oven located in the hallway, and McPherson placed the cup of water in it. Then she returned to the entryway door to lock it. McPherson testified that although she could unlock the door with one hand, locking the door required two hands, because she had to push on the door and turn the key at the same time. As McPherson approached the door, appellant shoved the door open and knocked her to the floor.
According to McPherson's testimony, appellant "got on top of [her]" and said he was going to kiss her. McPherson told appellant to leave her alone, saying, "[D]on't do this; I'm a married woman." Both of appellant's hands were around McPherson's throat and she could hardly breathe. Appellant released his grip from McPherson's neck and fondled her breasts. Appellant put one hand over McPherson's mouth. McPherson bit appellant's hand and kneed him in the groin. Appellant stood up. McPherson grabbed her radio from underneath her body and pressed a button to signal a "man down" alert. Prior to this point, she had unsuccessfully "tried to slip [the radio] out to get it to go off." The "man down" signal sounded, and appellant began running to the end of the hallway which led toward pod 2-D. As appellant was running, he tripped over a cart, and McPherson restrained him with handcuffs. Seconds later, other corrections officers arrived.
Corrections officers Daniel Lane and Eric Wolfe testified that they responded to McPherson's "man down" alert. Lane testified that McPherson was crying and shaking when he arrived. Wolfe testified that as he escorted appellant to an inmate segregation area, appellant stated that he "should have hurt her more."
Steve Arthur, a nurse at WCI, testified that McPherson was "obviously physically shaken" when he examined her shortly after the incident, and that she was "tearful" and "shaking." Arthur identified injuries to McPherson's right collarbone, her neck, and her left upper back.
Kenneth Greene, a physician who examined McPherson a few days after the incident for purposes of workers' compensation, testified that he found that she was suffering from a strain in her neck and lower back.
Tracie Kieter, a trooper investigator for the state highway patrol, investigated the area where the altercation occurred. Kieter testified that there was a butterfly earring located on the floor and a Styrofoam cup in the microwave.
Another inmate living in 2-C pod, Alfonso Singleton, was called as a defense witness. He testified that McPherson was nice to the inmates and brought them cigarettes and candy. In Singleton's opinion, McPherson was overly friendly. Singleton testified that she would discuss her personal life with the inmates and that her favorite inmates included appellant. Singleton further testified that on previous occasions he had seen appellant walk to the porter closet, take a mop, and follow McPherson into the restricted hallway area. According to Singleton, this happened a few times when McPherson was present, so he thought that appellant was working. Singleton admitted that on the day in question he had been placed "in the hold [sic]" by McPherson and therefore could not observe the altercation.
Following a jury trial, appellant was found guilty of assault and not guilty of gross sexual imposition. Appellant filed this appeal, raising one assignment of error for our review:
 THE DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES AND BY SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
In his assignment of error, appellant asserts that he did not receive effective assistance of counsel at trial. Specifically, appellant contends that his attorney should have objected to the trial court's ruling which prevented any cross-examination based upon "in camera
inspection exhibit 2." Appellant also insists that his trial counsel failed to thoroughly cross-examine McPherson regarding inconsistencies between her trial court testimony and written reports about the incident.
To demonstrate a claim of ineffective assistance of counsel, a defendant must first show that under the circumstances counsel's representation did not meet the objective standard of reasonable competence. Second, a defendant must show that he was prejudiced at trial as a result of this deficiency. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills (1992),62 Ohio St.3d 357, 370. Only if the defendant demonstrates that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been more favorable, will a reviewing court find prejudice. This probability must be sufficient to undermine confidence in the outcome of the case. Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
The effectiveness of counsel must be reviewed in light of the evidence against the defendant, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065; State v. Lytle (1976), 48 Ohio St.2d 391,397, vacated in part on other grounds (1978), 438 U.S. 910,98 S.Ct. 3135. An appellate court must not second-guess trial counsel's strategic decisions. State v. Carter (1995), 72 Ohio St.3d 545, 558.
In this case, appellant argues that his defense attorney provided ineffective assistance of counsel by failing to object to the trial court's ruling that the defense could not cross-examine McPherson usingin camera inspection exhibit 2, a written record of an interview McPherson gave to an investigating officer on the day of the incident.
Crim.R. 16(B)(1)(g) states the following:
 In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal.
It is well-settled that once a trial court independently determines that a producible out-of-court statement exists, attorneys for all parties must be given the opportunity to personally inspect the statement. State v. Daniels (1982), 1 Ohio St.3d 69, 70-71. "[S]imply permitting the attorneys to be passively present and available for consultation during the in camera inspection constitutes reversible error." Id. at 71.
In this case, the prosecutor produced three separate statements made by McPherson, which the trial court marked as in camera inspection exhibits 1, 2, and 3. The trial judge scrutinized these statements "with both counsel participating" and found no inconsistencies between McPherson's trial testimony and in camera exhibits 1 and 2. However, the trial judge found that there may have been an inconsistency in in camera exhibit 3, and provided it to defense counsel for use during cross-examination.
There are some inconsistencies between McPherson's trial testimony and her prior statement in in camera exhibit 2. At trial, McPherson testified that she unlocked the door to the hallway, walked to the microwave to heat a cup of water for coffee, and then returned to the door to lock it. McPherson explained that locking the door required two hands. In camera exhibit 2 does not mention that McPherson walked to the microwave before returning to lock the door. It states, "I walked past the porter closet, put my key in the door to access the unit managers [sic] area and opened the door. I went inside and started to put my key in the other side to lock the door when an inmate shoved the door open[.]"
At trial, McPherson also stated that after she signaled the "man down" alert, appellant began running toward the end of the hallway. McPherson testified that appellant tripped over a cart and then she was able to restrain him in handcuffs. In camera exhibit 2 does not mention that appellant tripped over a cart in the hallway. It states the following:
 I then grabbed my radio, [sic] and pushed the orange "man down button." The radio started to beep then indicating that it was activated. I was then able to get handcuffs on the inmate. Inmate White, at that point, after hearing the "man down" activate, more or less let me cuff him to the rear.
Material omissions may under certain circumstances be construed as inconsistencies within the meaning of Crim.R. 16(B)(1)(g). See State v.Hartford (1984), 21 Ohio App.3d 29, 31. The trial court should have allowed defense counsel to cross-examine McPherson on the two material omissions detailed above using in camera exhibit 2.
However, defense counsel used defendant's exhibit A and in camera
exhibit 3 to cross-examine McPherson about both of these inconsistencies. Defense counsel read from defendant's exhibit A, which was a statement written by McPherson that she submitted to Dr. Greene. This prior report of the incident also omitted the fact that McPherson walked to the microwave before attempting to lock the door to the hallway. Defense counsel read aloud a statement McPherson had written: "I keyed door open to center. As I was closing door to place keys in to relock [sic] on the other side, inmate White shoved open door attacked me." Defense counsel asked McPherson why her written description of the incident failed to state that she had walked to the microwave before returning to the door to lock it.
Defense counsel also asked McPherson about the significant differences between how she testified about apprehending appellant and what she had previously reported. Defense counsel noted that while at trial McPherson testified that she was able to handcuff appellant after he tripped over a cart, her statement to the investigating lieutenant (in in camera exhibit 3) was that "I had to bite his hand to get him to let go. As he was grabbing his groin area I had a chance to get my cuffs on him." Defense counsel pointed out that in her interview with the lieutenant, there is no indication that appellant had tripped.
We find that defense counsel's use of defendant's exhibit A, as well asin camera inspection exhibit 3, during cross-examination of McPherson about these discrepancies was effective. Had the trial court given defense counsel in camera inspection exhibit 2 to use during cross-examination, this would have served as cumulative impeachment evidence about these issues.
Appellant contends that in camera exhibit 2 reveals two other inconsistencies in McPherson's testimony. At trial, McPherson testified that when she was lying on the ground her radio was underneath her body, and she "tried to slip [the radio] out to get it to go off." In camera
exhibit 2 contains the statement that when appellant was on top of her, McPherson "reached for [her] radio and threw it across the floor trying to get it to activate the `man down' response." (Emphasis added.) We agree with appellant that the trial court should have found these descriptions to be inconsistent and allowed defense counsel the opportunity to cross-examine McPherson about this point using in camera
exhibit 2.
Defense counsel cross-examined McPherson about her radio without usingin camera exhibit 2. During her cross-examination, McPherson was asked why her "man down" alert did not automatically sound when she was shoved to the ground. McPherson admitted that a mercury function in the radio should have activated the "man down" alert, but asserted that for some reason it had not functioned properly that night. McPherson testified that she checks her "man down" button at the beginning of each shift, but explained that before this incident, she tested her radio only by hitting the "man down" button. McPherson explained that she now turns her radio upside down to ensure that the mercury is working when she performs a test.
Due to the trial court's ruling regarding in camera exhibit 2, defense counsel was not able to question McPherson about the fact that she had previously reported that she threw the radio across the floor. However, the cross-examination of McPherson raised questions as to why her "man down" signal did not automatically activate as designed.
Appellant also asserts that in camera exhibit 2 contains another inconsistency. McPherson's statement in in camera exhibit 2 was that appellant said he wanted to kiss her three times. McPherson's trial testimony was that appellant said this "just once." Once again, we find that the trial court should have permitted defense counsel to cross-examine McPherson about this discrepancy using in camera exhibit 2. However, we note that this appears to be a fairly minor point.
Appellant also asserts that defense counsel's overall cross-examination of McPherson did not meet the standard of reasonable competence. In addition to the questions posed by defense counsel during McPherson's cross-examination that we have already noted, defense counsel asked McPherson whether she drew blood when she bit appellant in the hand. McPherson answered that she had blood on her face when she went to the WCI nurse. Defense counsel later cross-examined Arthur about his examination of appellant's torso and hands. Arthur replied that he had found no injury or visible scratch marks on appellant.
In her summation, defense counsel argued that McPherson's "statements at this trial don't fit with her previous statements. And every time it starts falling apart she adds something new. And it only gets worse." Defense counsel's comments were supported by definitive examples of changes that McPherson had made to her story. Defense counsel argued that originally McPherson did not say (1) that after entering the restricted hallway she placed a cup in the microwave before locking the hallway door, or (2) that appellant tripped over a cart in the hall so that she was able to handcuff him. Defense counsel argued that these additions were made by McPherson in subsequent statements to make her recount more believable.
Also, defense counsel noted that McPherson's testimony that she told appellant not to harm her because she was a married woman was not in any of her prior statements about the incident, but was added for the first time at trial. In addition, defense counsel asserted that although McPherson testified that she bit appellant in the hand so hard that she drew blood, the nurse testified that appellant's hands or torso were not scratched or injured, and the investigators did not indicate that any blood was found at the scene. Finally, defense counsel argued that the reason McPherson's "man down" button did not automatically activate when she was down on the ground was not due to any technical malfunction but was due to the fact that McPherson was not on the ground but upright and engaging in consensual but inappropriate behavior with appellant.
Appellant argues that it was ineffective assistance of counsel to fail to object to the trial court's decision to disallow defense counsel to use in camera exhibit 2 during its cross-examination of McPherson. Although we agree with appellant's assertion that defense counsel should have been allowed to use in camera exhibit 2 to cross-examine McPherson on apparently inconsistent statements, we disagree that defense counsel's failure to object to the trial court's ruling amounted to ineffective assistance of counsel. We find that any prejudice resulting from defense counsel's failure to object to the trial court's ruling regarding incamera exhibit 2 was not so great as to undermine confidence in the jury's verdict. The most significant inconsistencies between in camera
exhibit 2 and McPherson's trial testimony were brought to the jury's attention through defense counsel's use of other prior statements made by McPherson. The inconsistencies that were not subject to cross-examination were relatively minor and would not, in all reasonable probability, have changed the jury's verdict. Therefore, we conclude that appellant was provided with effective assistance of counsel. The assignment of error is overruled.
Judgment affirmed.
 _________ VALEN, J.
POWELL, P.J., and YOUNG, J., concur.
[1] 1. McPherson testified that a "shank" is a homemade weapon.