OPINION
{¶ 1} Defendant, James Brewer, appeals from his conviction after a trial by jury and resulting sentences for rape, kidnapping and abduction.
{¶ 2} The evidence introduced at trial by the State demonstrates that the victim, S.A., is a twenty-three year old learning disabled female who suffers from multiple mental and emotional disorders. At the time of these offenses S.A. was living at The Other Place homeless shelter in Dayton. S.A. met Defendant at that homeless shelter and they became friends.
{¶ 3} On the morning of November 29, 2002, S.A. asked Defendant to give her a ride to her uncle's business in Kettering because she had a gift to drop off for her son who lives with her aunt and uncle. Defendant agreed. After they got into Defendant's truck, Defendant asked S.A. if they could first go to Xenia to his niece's apartment before going to Kettering. S.A. agreed so long as they arrived in Kettering before noon when her uncle's business closed.
{¶ 4} When they arrived in Xenia, Defendant drove past his nieces' apartment and never got out of his truck. Defendant then asked S.A. if she would like to see some pretty country scenery before going to Kettering. S.A. agreed and Defendant drove out into the country to a remote location near a covered bridge on Charlton-Mill Road in Greene County. Defendant then drove his truck into a cornfield to a secluded area where the road was no longer visible.
{¶ 5} Defendant parked his truck and began trying to kiss S.A. She refused Defendant's advances, whereupon he grabbed a large knife from the dashboard and held it to S.A.'s throat. Defendant forced S.A. to remove her clothing and then he licked her inner thighs and her vaginal and anal areas. He also inserted his fingers inside her vagina and anus. During this assault Defendant held S.A. by the hair and slammed her head into the truck door. Defendant threatened not to take S.A. back to The Other Place shelter if she didn't stop crying.
{¶ 6} After S.A. regained her composure, Defendant returned her clothes to her. Defendant then drove S.A. back to The Other Place shelter. They made two or three stops along the way, during which time S.A. stayed in Defendant's truck and did not attempt to flee. Defendant dropped S.A. off one block from the shelter after unsuccessfully trying to placate her about the assault. Upon arriving at the shelter, S.A. immediately reported the sexual assault to Terra Texter, a social worker. Police were notified and eventually Greene County Sheriff's deputies picked up S.A. at the shelter and took her back to the Greene County Sheriff's Office.
{¶ 7} After meeting with Detectives Walton and Swisshelm and telling them what had happened, S.A. rode with them and was able to direct them to the cornfield where the sexual assault occurred. At that location the detectives observed and photographed unique tire tracks leading into and out of the cornfield. S.A. was then transported to Greene Memorial Hospital for a sexual assault examination.
{¶ 8} After obtaining a history of the sexual assault from S.A., nurse Megan Depouw collected evidence including swabbing of S.A.'s inner thighs which revealed the presence of some body fluid. S.A. had not yet bathed following the attack. Because the emergency room was abnormally busy that day, S.A. had to wait a substantial period of time before she was examined by the doctor. Following that examination, S.A. was returned to St. Vincent's homeless shelter for the night.
{¶ 9} Defendant fled to Kentucky immediately after he had returned S.A. to the shelter. A few days later authorities in Kentucky notified Greene County authorities that Defendant had been arrested. At the time of his arrest, Defendant led police on a high speed chase that ended when Defendant crashed his truck. Kentucky police recovered from Defendant's truck a large knife which was identified as the knife he used during the sexual assault of S.A.
{¶ 10} The day after Defendant's arrest, Detectives Walton and Swisshelm traveled to Kentucky where they met with Defendant while he was in the custody of the Menifee County Sheriff. Defendant gave Detective Walton a taped statement. He admitted to driving S.A. to the cornfield for the purpose of having sex with her, but Defendant claimed that S.A. "freaked out" on him and he did not remove any of her clothes or engage in sexual activity with her. Defendant claimed that he handed the knife to S.A. so she could protect herself because she thought Defendant was going to rape her. When Detectives Walton and Swisshelm examined Defendant's truck, they discovered three matching and one odd tire that matched the tire tracks they had observed in the cornfield.
{¶ 11} Laboratory analysis of the swabbings from S.A.'s right inner thigh revealed the presence of saliva which contained a mixture of DNA consistent with S.A. and Defendant. The statistical probability that someone other than Defendant had contributed to that DNA mixture is only one in 65,400.
{¶ 12} Defendant was indicted on two counts of forcible rape, R.C.2907.02(A)(2), one count of kidnapping, R.C. 2905.01(A)(4), and one count of abduction, R.C. 2905.02(A)(2). Following a jury trial Defendant was found guilty of the first count of rape involving cunnilingus. The jury was unable to reach a verdict on the second rape charge involving digital penetration. The jury also found Defendant guilty of both kidnapping and abduction.
{¶ 13} After merging his two offenses for sentencing purposes, the trial court sentenced Defendant to the maximum allowable term of ten years for rape and eight years for kidnapping, and ordered that those sentences be served consecutively for a total of eighteen years. The trial court also designated Defendant a sexual predator.
{¶ 14} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR
{¶ 15} "The verdict of the jury was against the manifest weight of the evidence."
{¶ 16} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15562, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
{¶ 17} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
{¶ 18} The evidence introduced at trial presents conflicting versions of the events that transpired. In resolving that conflict the jury chose to believe S.A. rather than Defendant. In this assignment of error Defendant argues that S.A.'s version of the events is not worthy of belief because she did not attempt to escape from Defendant or ask other people for help despite numerous opportunities which arose when Defendant stopped at a number of different businesses on the way back to Dayton following this assault.
{¶ 19} If the State's evidence is believed, it is reasonable to infer that S.A. was traumatized by Defendant's sudden and violent sexual assault. She testified at trial that she did not run from Defendant during their various stops because she was frightened and didn't know where she was. We will not second guess the wisdom of S.A.'s response after, as she described it, being viciously assaulted and threatened by Defendant. She apparently did what she thought was necessary to survive this ordeal, which was to remain quiet and compliant. We note that as soon as S.A. was away from Defendant, she reported this sexual assault and sought help.
{¶ 20} Defendant additionally argues that S.A.'s version of the events should not be believed because of her mental limitations and emotional disorders. The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of fact to resolve. State v.DeHass (1967), 10 Ohio St.2d 230.
{¶ 21} In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
{¶ 22} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
{¶ 23} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
{¶ 24} The jury did not lose its way simply because it chose to believe S.A.'s version of the events rather than Defendant's, which it was entitled to do. S.A.'s version of the events is supported by DNA and other physical evidence as well as Defendant's own statements to the police, some of which are plainly inconsistent with the physical evidence. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction for rape is not against the manifest weight of the evidence.
{¶ 25} Defendant additionally argues that S.A.'s testimony, even if believed, is nevertheless insufficient as a matter of law to prove penetration of the vaginal or anal cavity, and thus demonstrate the "sexual conduct" necessary to establish rape. R.C. 2907.02. This raises an issue concerning sufficiency of the evidence.
{¶ 26} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
{¶ 27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
{¶ 28} Rape as defined in R.C. 2907.02 requires "sexual conduct," which is defined in R.C. 2907.01(A):
{¶ 29} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
{¶ 30} In State v. Grant (December 31, 2003), Montgomery App. No. 19824, 2003-Ohio-7240, this court observed:
{¶ 31} "The vagina is the hollow passage leading from the uterus of the female body outward to the exterior genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora. The term `vaginal cavity' refers to that entire anatomical process and any part of it.
{¶ 32} "Penetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. The penetration need only be `slight.' R.C. 2907.01(A). Therefore, if the object is introduced with sufficient force to cause the labia majora to spread, penetration has occurred." (Opinion at 9).
{¶ 33} The forms of sexual conduct involving "intercourse" between perpetrator and victim, whether vaginal or anal, require penetration of the vaginal cavity or anus, however slight. State v. Wells (2001),91 Ohio St.3d 32; State v. Grant; State v. Lucas (Sept. 21, 2001), Montgomery App. No. 18644. Penetration of a victim's bodily orifice is not required for "fellatio," which involves oral stimulation of the penis. Neither is it required for "cunnilingus," which involves licking or oral stimulation of the vulva. Both are exterior organs.
{¶ 34} Defendant's conviction for Rape is grounded on alleged cunnilingus. S.A. testified that Defendant "put his face down in my vaginal area and licked the inner part of my thigh and vaginal and anal area." (T. 54). That evidence is sufficient to prove cunnilingus. The fact that penetration is not also demonstrated is immaterial.
{¶ 35} Finally, Defendant argues that his conviction for kidnapping is against the manifest weight of the evidence because S.A. testified that she was not restrained in any way inside Defendant's truck when he stopped at various locations on the way back to Dayton following the sexual assault.
{¶ 36} Defendant was convicted of violating R.C. 2905.01(A)(4) which provides:
{¶ 37} "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
{¶ 38} "To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."
{¶ 39} S.A.'s testimony, if believed, clearly establishes that during the sexual assault Defendant restrained her liberty by force by holding a large knife against her throat while he sexually assaulted her. That evidence, if believed, is legally sufficient to prove kidnapping. Moreover, as we previously mentioned, the jury was entitled to believe S.A.'s version of the events, as they did. Defendant's conviction for kidnapping is not against the manifest weight of the evidence.
{¶ 40} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
{¶ 41} "The trial court erred in not allowing counsel to cross examine the complainant with her prior statements."
{¶ 42} Crim.R. 16(B)(1)(g) provides:
{¶ 43} "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
{¶ 44} "ADVANCE \d 4If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
{¶ 45} "ADVANCE \d 4If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
{¶ 46} "ADVANCE \d 4Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
The trial transcript indicates that at the conclusion of the victim's direct examination an unrecorded colloquy ensued at the bench, following which the court made the following statement for the record.
{¶ 47} "THE COURT: A request has been made by the Defense Counsel for the Court, pursuant to Criminal Rule 16(B) (1(g), to review the statement of the witness who has just testified, which is a transcript of a tape recording previously made, for the purpose of determining if there are any inconsistencies between what she had said and what the State would indicate.
{¶ 48} "The Court finds that there are none. The Court determines there are no inconsistencies and shall not give the Defense attorney the statement to use on cross examination or comment thereon. The Court will preserve the statement for the record. Okay." (T. 65).
{¶ 49} The statement was not preserved for the record. We therefore requested that the trial court procure and file a copy of the statement with the clerk of this court. A copy was filed on June 10, 2004.
{¶ 50} The statement is a transcript of the victim's audio-recorded statement to police. Statements made by a witness to police concerning matters to which she testified at trial are statements subject to the requirements of Crim.R. 16(B)(1)(g).
{¶ 51} It is unclear from the record when defense counsel had asked the court to conduct an in-camera review. It may have been during the unrecorded colloquy at the bench. In any event, it is reasonably clear from the record that the court performed the in camera review alone, without the participation of counsel. Further support for that conclusion is exemplified by Defendant's request that we examine the statement to determine whether the trial court abused its discretion when it declined to allow Defendant to use it in his cross-examination of S.A., the alleged victim.
{¶ 52} Crim.R. 16(B)(1)(g) provides that the court shall conduct the in-camera examination upon request, "with the defense attorney and prosecuting attorney present and participating." Therefore "[o]nce the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties, upon the granting of a defendant's timely motion for an in camera inspection of the statement, must be given the opportunity to: (1) inspect the statement personally; and (2) call to the court's attention any perceived inconsistencies between the testimony of the witness and the prior statement." State v. Daniels (1982), 1 Ohio St.3d 69, Syllabus by the Court.
{¶ 53} If, as the record strongly suggests, the court did not allow counsel to participate in its in-camera review in the manner whichDaniels requires, the court erred. Then, Defendant's failure to object to that error waives his right to argue on appeal that, when the court then found no material inconsistencies between the statement and the witness's testimony on direct and consequently refused to allow Defendant to use the statement to cross-examine S.A., the court abused its discretion.
{¶ 54} When error is waived, we are confined to the plain error standard of review. Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91.
{¶ 55} The copy of S.A.'s statement to police is seventeen pages in length. We have reviewed it, in relation to S.A's testimony at trial. On the plain error standard, we cannot find that the trial court abused its discretion when it denied Defendant the opportunity to use the statement to cross-examine S.A.
{¶ 56} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
{¶ 57} "The trial court erred by allowing irrelevant and prejudicial evidence to be presented to the jury."
{¶ 58} The decision whether to admit or exclude evidence rests within the sound discretion of the trial court and its decision in such matters will not be reversed on appeal absent an abuse of discretion and material prejudice. State v. Apanovitch (1987), 33 Ohio St.3d 19, 25. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980), 62 Ohio St.2d 151.
{¶ 59} A few days after the sexual assault took place, Defendant was arrested in Menifee County, Kentucky. Detective Walton was notified that same day that Defendant had been apprehended. On the following day, Detective Walton drove to Kentucky where he obtained a tape recorded statement from Defendant. In the statement he gave, Defendant volunteered information about peripheral matters unrelated to this offense or his involvement with S.A. For instance, Defendant spoke about one previous occasion when his parole was revoked and he was sent back to prison, and the belief by some of Defendant's family members that he went to Kentucky to kill them.
{¶ 60} Prior to trial Defendant filed a motion to suppress the statement he gave to Detective Walton. The trial court overruled that motion following a hearing. However, pursuant to Defendant's motion in limine and the trial court's directive, the State redacted from Defendant's statement the comments he made regarding his prior record, parole status, sex offender status, prison time, various statements regarding his family members and their fear of him, and his requests to take a polygraph test.
{¶ 61} At trial, the State played for the jury over Defendant's objection the tape recording of Defendant's statement to Detective Walton. Defendant objected to two portions of his statement: one portion dealing with his comments that some of his family members thought Defendant was going to Kentucky to kill them, and another portion wherein Defendant comments upon a previous revocation of his parole. The trial court overruled Defendant's objections and permitted his statements to be admitted.
{¶ 62} Defendant argues that those portions of his statement to which he objected should have been excluded because they were irrelevant to the offenses involving his assault of S.A., and their prejudicial impact far outweighed any probative value because they portray Defendant as a violent person who has previously been to prison. The State argues that Defendant's desire to discuss peripheral matters not associated with the allegation that he assaulted S.A. could be used by the jury reasonably to infer that Defendant was not being truthful with police during the interview.
{¶ 63} We conclude that, even assuming arguendo that the trial court erred in admitting the two small portions of Defendant's statement to which he objected because that evidence was only marginally relevant, if at all, and though it is more prejudicial than probative, the error is nevertheless harmless beyond a reasonable doubt. There is no reasonable possibility that this error contributed to Defendant's conviction due to the other overwhelming evidence of Defendant's guilt. That evidence includes the victim's testimony, Defendant's statements to police, and the DNA evidence. Chapman v. California (1967), 386 U.S. 18; State v.Lytle (1976), 48 Ohio St.2d 391.
{¶ 64} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Wolff, J., concur.