DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Anthony Villa, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Lorain police officers arrived at Gil's Bar in the early morning hours of April 13, 2004, following a report of a shooting. Upon arriving, officers began to question employees of the bar to gain a better understanding of the night's events. Police questioned the following individuals: Harold Hawthorne, a security team member; Tina Curry, the owner of the bar; Ryan Smith, the bar employee who was checking IDs on the night in question; Herbert Cornwell, the head of security at the bar on the date in question; Oliver Evans, another security team member at the bar; and, Patricia Danczik, a bartender at Gil's.
 {¶ 3} From these witnesses, police developed the following facts. A young, Hispanic male attempted to enter the bar at approximately 11:00 p.m. As he did not have identification, he was refused entry. The male returned a few minutes later and offered to pay the owner cash in order to be admitted. Security members then escorted the male out of the bar's entry hallway. Upon exiting, the male attempted to punch Hawthorne and the two fought on the front porch of the bar. Hawthorne told authorities that the male bit him on the thumb and the face, drawing blood on both.
 {¶ 4} Later on that night, at approximately 2:30 a.m., the house lights were turned on in the bar as the employees began to clean up. Witnesses stated that two men in hooded sweatshirts entered the bar and one of the men began shooting. Many of the employees ran for cover, and Hawthorne began chasing the men who had entered the bar. However, before he could leave the bar, Hawthorne heard someone scream the name of his stepson. Hawthorne turned towards the screams and realized that his stepson, Reynaldo Collins, had been shot in the forehead. Tragically, Collins died a short time later.
 {¶ 5} Lorain Detective Dennis Moskal received two anonymous phone calls on April 13, 2004, identifying Appellant as the perpetrator of the shooting at Gil's. Detective Moskal then retrieved a picture of Appellant from an offender's database and found that Appellant fit the description supplied by the witnesses. Detective Moskal then created a photo array using Appellant's photo and five other Hispanic males with similar features. Over the next few weeks, Detective Moskal had all five eyewitnesses view the array. Each of the five immediately identified Appellant as the perpetrator.
 {¶ 6} As a result of the investigation, Appellant was indicted on the following counts: one count of murder in violation of R.C. 2903.02(A); one count of murder in violation of R.C. 2903.02(B); one count of aggravated murder in violation of R.C. 2903.01; and one count of felonious assault in violation of R.C. 2903.11(A). Each count in the indictment carried a firearm specification.
 {¶ 7} On June 30, 2004, Appellant moved to suppress the eyewitnesses' identifications, asserting that the photo array was unduly suggestive. Following an evidentiary hearing, Appellant's motion was overruled and the matter proceeded to a jury trial.
 {¶ 8} At trial, the State presented the testimony of its five eyewitnesses, each of whom placed Appellant at the bar. Each testified to seeing Appellant either having fought with Hawthorne, as the shooter, or as both the shooter and the man who fought with Hawthorne. At the conclusion of the State's case, Appellant moved for acquittal pursuant to Crim.R. 29. The trial court overruled the motion and Appellant called Dr. Harvey Shulman as an expert witness. Dr. Shulman opined that eyewitness testimony is often unreliable. He testified at length regarding the various factors which may increase or decrease the accuracy of a witness' testimony. Appellant then rested and renewed his Crim.R. 29 motion, which was again overruled by the trial court. The matter was then submitted to the jury.
 {¶ 9} During deliberations, the jury sent a note to the court stating that they were "11 to 1" and wanted to talk to the court. The Court then spoke with counsel for both Appellant and the State. Following a discussion, the Court inquired further of the jury, asking "And what do you wish to talk about?" The jury responded by informing the judge again of their numerical division and this time informing him of which side their current vote favored. The trial court again convened the parties and informed them that the jury had again disregarded the trial court's earlier instructions and given its numerical division. The trial court, however, informed the parties that it would not disclose the information regarding the specific nature of the jury's numerical division. Thereafter, the parties agreed that aHoward charge was appropriate. Appellant moved for a mistrial on the grounds that the trial court had not disclosed the information provided by the jury. The trial court overruled the motion and gave the Howard charge. Thereafter, the jury returned a verdict finding Appellant guilty on all the charges in the indictment. Appellant was sentenced to twenty-three years to life in prison. Appellant timely appealed his convictions, raising seven assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS IMPROPERLY SUGGESTIVE PRETRIAL IDENTIFICATION."
 {¶ 10} In his first assignment of error, Appellant asserts that his rights to due process were violated because his identification was the result of an unduly suggestive photo array. We disagree.
 {¶ 11} Ohio has adopted the United States Supreme Court's two-part analysis for assessing a photo array: (1) whether the identification was unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances. See State v. Waddy (1992),63 Ohio St.3d 424, 438-39. The United States Supreme Court set forth the following standard of review:
"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384.
The Court offered the following rationale for such a high threshold:
"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.
 {¶ 12} In addition, the Ohio Supreme Court has provided the factors this Court must examine to determine the reliability of the identification.
"In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification." (Citations omitted.) State v. Davis (1996), 76 Ohio St.3d 107,113.
In his brief, Appellant asserts as follows:
"The fact of the matter is that Appellant's photo is of a different texture then (sic) the other photos and sticks out as if Appellant were a different color or ethnic background."
We disagree.
 {¶ 13} The photo array contains six photos. Each individual in the array appears to be in the same age range as Appellant and the same ethnicity. While the lighting in Appellant's photo is different, such is true of all of the photos. None of the photos has an identical background or lighting, nor is there any such requirement in the law. Accordingly, we are not persuaded that the array was unduly suggestive.
 {¶ 14} Assuming arguendo that the array was unduly suggestive, this Court finds that the witnesses' identifications were reliable under the totality of the circumstances. As an initial matter, we note that Appellant has not independently addressed the admissibility of the identifications of the five eyewitnesses. Furthermore, he has not cited to any portion of the record to support his broad claims that all of the identifications were unreliable. See App.R. 16(A)(7). This Court, therefore, is permitted to disregard his argument in its entirety. Loc.R. 7(F). "If an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 
18673, at *8.
 {¶ 15} A review of the record also demonstrates that Appellant's claim lacks merit. The following facts support this Court's conclusion: 1) each of the five eyewitnesses testified that the porch of the bar where Appellant fought with Hawthorne and the interior of the bar where Appellant shot Collins were well lit; 2) the eyewitnesses testified that they each had a clear, unobstructed view of Appellant when they saw his face; 3) each witness was certain of his or her identification of Appellant as the perpetrator; 4) each of the witness' initial descriptions described Appellant in a fairly accurate manner, i.e., each witness properly described Appellant as Hispanic, described his height within a few inches of Appellant's actual height, and adequately described his build; and 5) each of the witnesses identified Appellant within two weeks of the crime, several within 48 hours of the crime. The eyewitnesses' identifications, therefore, were reliable under the totality of the circumstances.
 {¶ 16} The trial court did not err in permitting testimony regarding the identification of Appellant by the eyewitnesses. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BY DENYING APPELLANT'S MOTION FOR MISTRIAL [.]"
 {¶ 17} In his second assignment of error, Appellant contends that the trial court erred in denying his motion for a mistrial. This Court disagrees.
 {¶ 18} A trial court's ruling on a motion for a mistrial will be reversed only for an abuse of discretion. See State v.Stewart (1996), 111 Ohio App.3d 525, 533. An abuse of discretion is more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable.State v. Smith, 9th Dist. No. 22550, 2006-Ohio-158, at ¶ 9. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 19} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible."State v. Franklin (1991), 62 Ohio St.3d 118, 127. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected. State v. Nichols (1993), 85 Ohio App.3d 65, 69.
 {¶ 20} In his assignment of error, Appellant contends that the trial court erred when it did not declare a mistrial once it received information from the jury regarding its numerical division. We disagree.
 {¶ 21} If a trial judge questions a jury regarding its numerical division, the jury's verdict must be reversed.Brasfield v. U.S. (1926), 272 U.S. 448, 450. We agree, however, with our sister district that the trial court's receipt of such information, when it is unsolicited and contrary to the trial court's instructions, is not in and of itself error. State v.Trussell (May 16, 1979), 2d Dist. No. 5927, at *8 ("Since the trial judge had not involved himself in obtaining this forbidden information, there was no error.") While we note that the trial judge herein asked the jury to clarify an earlier statement, he in no manner asked the jury for its numerical division. Rather, in earlier instructions he explicitly informed the jury not to provide the status of their deliberations to the court. Therefore, the trial court's mere receipt of this information was not error.
 {¶ 22} Initially, we note that Appellant's argument has focused upon the trial court's refusal to divulge the information that it received from the jury. Appellant has cited no authority and this Court has found no authority which supports Appellant's contention that it was error for the trial court to refuse to provide the information. Based upon the U.S. Supreme Court's precedent condemning the practice of the trial court's inquiring about a jury's numerical division, we find that the trial court's refusal to divulge information after its unsolicited receipt was proper. Revealing this information to counsel would have served no other purpose than to have exacerbated the jury's error in providing the information in the first instance.
 {¶ 23} We further agree with the Trussel court that the proper inquiry must focus on what action the trial court took once it received this information. Id. See, also, Sanders v.U.S. (C.A.5, 1969), 415 F.2d. 621, 631-32; U.S. v. Cook
(C.A.8, 1981), 663 F.2d 808, 809, fn. 3. Appellant, however, has made no argument regarding the trial court's actions after receiving the jury's numerical division. Rather, his sole contention is that the trial court erred simply by receiving the information and refusing to divulge that information to counsel. Having found no error in those actions, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BY DENYING APPELLANT THE OPPORTUNITY TO REVIEW PRE-TRIAL STATEMENTS OF PROSECUTION WITNESSES AS REQUIRED BY CRIMINAL RULE 16."
 {¶ 24} In his third assignment of error, Appellant contends that the trial court erred when it found that incident reports prepared by the investigating officers were not statements under Crim.R. 16. This Court disagrees.
 {¶ 25} Initially, we note that Appellant has not identified any portion of the record which would support his third assignment of error. He, therefore, has not followed the dictates of App.R. 16(A)(7). Even ignoring the deficiency in Appellant's brief, his claim still must fail.
 {¶ 26} Crim.R. 16(B)(1)(g) provides in pertinent part as follows:
"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."
The initial question before the trial court, therefore, was whether the police reports sought by Appellant were producible "witness statements" within the meaning of Crim.R. 16(B)(1)(g).State v. Daniels (1982), 1 Ohio St.3d 69, syllabus. Upon review, we find that the incident reports are not "witness statements" and thus were not subject to disclosure.
 {¶ 27} The Ohio Supreme Court has rejected the argument raised by Appellant that the incident reports should be considered "witness statements" under Crim.R. 16(B)(1)(g). InState v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, the Court was asked to determine whether incident reports qualified as "witness statements" under Crim.R. 16. The Court held as follows:
"In State v. Jenkins (1984), 15 Ohio St.3d 164, * * * we considered whether police reports constitute statements discoverable under Crim.R. 16(B)(1)(g). We ruled that those portions of police reports recording the officer's personal observations and recollections of the events are subject to scrutiny under Crim.R. 16(B)(1)(g), stating:
"Clearly, a signed written statement of a state witness would serve the purpose of Crim.R. 16(B)(1)(g) and fall within the plain meaning of the word statement, just as would a recording of the witness' words or a transcription thereof. We see no reason why the mere fact that the document was a report of a police officer would automatically bar its disclosure.
"In Jenkins, we specifically excluded from discovery other portions of a police officer's report, including statements from other witnesses contained therein. This is not to say that all portions of a police report are discoverable under Crim.R. 16(B)(1)(g). Reading this section in pari materia with Crim.R. 16(B)(2), it becomes apparent that those portions of a testifying police officer's signed report concerning his observations and recollection of the events are statements within the meaning of Crim.R. 16(B)(1)(g). Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2)." Id. at ¶ 41-43. (Internal citations, quotations and emphasis omitted.)
Based on Cunningham and our review of the reports, the trial court did not err in finding that the incident reports prepared did not constitute statements of the individual witnesses as summarized by the detectives. Appellant sought the reports based upon the information the officers detailed in them regarding witness statements. Cunningham squarely held that those portions are not producible statements. Appellant did not seek the reports on the basis that they contained the officer's personal observations and recollection of events; discoverable statements under Cunningham. Accordingly, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BY INSTRUCTING THE JURY ON FLIGHT WITHOUT CLEAR AND CONVINCING EVIDENCE THAT APPELLANT FLED THE JURISDICTION OF THE COURT TO AVOID PROSECUTION."
 {¶ 28} In his fourth assignment of error, Appellant asserts that the trial court erred when it instructed the jury on flight. Specifically, Appellant urges that the instruction on flight was not warranted by the evidence and that the instruction itself is unconstitutional. This Court disagrees.
 {¶ 29} It is well established that evidence of flight is admissible as it tends to show consciousness of guilt. Sibron v.New York (1968), 392 U.S. 40, 66. Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. See United States v. Dillon
(C.A.6, 1989), 870 F.2d 1125. The decision whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.State v. Sims (1984), 13 Ohio App.3d 287, 289. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} The trial court gave the following jury instruction on flight:
"In this case, there is evidence tending to indicate that the Defendant fled from the vicinity of the alleged crime. As the Defendant has not been charged with a crime for this fleeing, this evidence can only be considered for a limited purpose.
"In this regard, you are instructed that flight, in and of itself, does not raise a presumption of guilt, but it may tend to show consciousness of guilt or a guilty connection with the crime.
"If, therefore, you find that the Defendant did flee from the scene of the alleged crime, you may consider that circumstance when determining the guilt or innocence of the Defendant in this case.
"This evidence cannot be considered for any other purpose.
"Upon you alone rests the decision to determine what weight, if any, to place upon the evidence you find, if any, bearing upon this issue."
This Court has previously rejected Appellant's argument that the above instruction creates an improper presumption of guilt. See State v. Davilla, 9th Dist. No. 03CA008413, 2004-Ohio-4448. In Davilla, we held as follows:
"Additionally, the instruction given did not create an improper conclusive presumption as Appellant argues. The United States Supreme Court defined a conclusive presumption as an irrebuttable direction to the jury which unconstitutionally shifts the burden of persuasion to the defendant. Sandstrom v. Montana (1979),442 U.S. 510, 517. However, the modifier "may" before "consider" supports the conclusion that no reasonable jury could have felt compelled to presume guilt on the instruction given. State v.Montgomery (1991), 61 Ohio St.3d 410, 415." Id. at ¶ 16.
 {¶ 31} Furthermore, we find that the State produced sufficient evidence to warrant the instruction on flight. In its case in chief, the State presented evidence that Appellant was sought for questioning within a day of the crime. Posters were circulated throughout the county offering a reward for information leading to his apprehension. Local law enforcement and the U.S. Marshal Service, however, were unable to locate Appellant in Lorain County. Several weeks later, Appellant was arrested in Florida. Accordingly, the trial court did not abuse its discretion in finding that the State had presented sufficient evidence that Appellant fled the jurisdiction following the crime. Appellant's fourth assignment of error, therefore, is overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED JUDGMENT OF CONVICTION, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF CRIMINAL RULE 29 [AND] ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 32} In his fifth and sixth assignments of error, Appellant contends that his convictions were against the manifest weight of the evidence and that the State produced insufficient evidence to support the convictions. This Court disagrees.
 {¶ 33} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991),61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *4. (Emphasis omitted).
Accordingly, we address Appellant's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 34} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 35} Appellant was convicted of aggravated murder in violation of R.C. 2903.01(A), which provides as follows:
"No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."
Additionally, Appellant was convicted of two counts of murder; one in violation of R.C. 2903.02(A) and one count in violation of R.C. 2903.02(B). R.C. 2903.02 provides as follows:
"(A) No person shall purposely cause the death of another[.]
"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04
of the Revised Code."
Finally, Appellant was convicted of one count of felonious assault in violation of R.C. 2903.11(A)(1) which provides as follows:
"No person shall knowingly * * * [c]ause serious physical harm to another[.]"
 {¶ 36} Initially, we note that Appellant's trial transcripts encompass more than eleven hundred pages. On appeal, Appellant has not cited to a single portion of the record to support his claims. Accordingly, he has not met his burden under App.R. 16(A)(7). "If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument." Loc.R. 7(F). This Court, therefore, need not craft an argument on Appellant's behalf. Cardone, supra, at *8.
 {¶ 37} Furthermore, our review of the record demonstrates that the State introduced substantial evidence to justify Appellant's convictions. Five separate eyewitnesses identified Appellant. Hawthorne and Cornwell identified Appellant as both the shooter and the individual who fought with Hawthorne earlier in the night. Smith and Evans identified Appellant as the man who fought with Hawthorne that night. Finally, Danczik identified Appellant as the shooter. Each of the five eyewitnesses testified that the lighting was good when he or she viewed Appellant and that he or she was certain that Appellant was the perpetrator.
 {¶ 38} Additionally, each of the eyewitnesses positively identified Appellant within two weeks of the shooting. Each testified that he or she had not discussed the incident with another and had thus independently identified Appellant without outside influence. Based upon the above testimony, Appellant's sole witness, Dr. Harvey Shulman, served to bolster the State's case, testifying as follows:
"It seems very impressive when five witnesses seem to agree on the identification of a person. It's natural to wonder how it is that all five could be wrong. Underlying this impression is the idea that the five witnesses are independent of one another, because that's what would make it impressive that five people agreed."
In its case, the State presented evidence that these five witnesses' identifications were independent. Each witness testified that he or she did not discuss the identity of the perpetrator with any other witnesses. Each witness further testified that he or she had not been exposed to any public accounts of the crime.
 {¶ 39} Accordingly, the State presented undisputed evidence that Appellant fought with Hawthorne, returned to the bar hours later, fired six shots, and killed Collins. Those facts demonstrate that Appellant became angry when denied admission to the bar, returned several hours later with a gun, and shot a patron of the bar in the forehead from close range. We note that "a firearm is an inherently dangerous instrumentality, the use of which is likely to produce death." State v. Seiber (1990),56 Ohio St.3d 4, 14, quoting State v. Widner (1982),69 Ohio St.2d 267, 270. Accordingly, this Court cannot say that the jury clearly lost its way in convicting Appellant of aggravated murder. Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra, at *2. Appellant's fifth and sixth assignments of error are overruled.
 ASSIGNMENT OF ERROR VII
"APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION[.]"
 {¶ 40} In his seventh assignment of error, Appellant asserts that his trial counsel was ineffective. We disagree.
 {¶ 41} A claim of ineffective assistance of counsel requires Appellant to satisfy a two prong test. First, he must prove that trial counsel's performance was deficient. Strickland v.Washington (1984), 466 U.S. 668, 687. That is, Appellant "must show that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed Appellant by theSixth Amendment." State v. Srock, 9th Dist. No. 22812, 2006-Ohio-251, at ¶ 20, citing Strickland, 466 U.S. at 687. Second, Appellant must "demonstrate that he was prejudiced by his trial counsel's deficient performance." Srock at ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Further, this Court need not analyze both prongs of the Strickland test if we find that Appellant failed to prove either. State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10. Finally, Appellant must overcome the strong presumption that licensed attorneys in Ohio are competent. State v. Smith (1985), 17 Ohio St.3d 98, 100.
Voir Dire
 {¶ 42} Appellant first asserts that his counsel did not thoroughly question jurors about their exposure to wanted posters containing his photograph. We disagree.
 {¶ 43} Initially, we note that "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." State v. Evans (1992),63 Ohio St.3d 231, 247. During voir dire, the trial court questioned the jurors about their possible exposure to pretrial publicity. Appellant's counsel then questioned the sole juror who had indicated that he vaguely remembered a newspaper article regarding the incident. It is unclear what further questions Appellant's counsel could have asked once jurors indicated that they had not been exposed to pretrial publicity. Accordingly, we find that Appellant's counsel did not err in failing to question the jurors about pretrial publicity once the jurors had denied any exposure to such publicity.
Crim.R. 16 Procedure
 {¶ 44} Appellant next asserts that his counsel was ineffective in permitting the trial court to determine that certain incident reports were not statements within the meaning of Crim.R. 16. Specifically, Appellant asserts that his counsel erred when he failed to object when the trial court made its determination without permitting Appellant's counsel an in camera inspection of the reports. We disagree.
 {¶ 45} As noted above, the trial court properly made an initial determination regarding whether a producible statement existed. Daniels, 1 Ohio St.3d at syllabus. Above we found that the trial court properly determined that no producible statement existed. See, supra, at ¶ 27. Appellant's counsel, therefore, did not err in failing to object to the trial court's determination that no in camera inspection was warranted.
Prosecutorial Misconduct
 {¶ 46} Finally, Appellant asserts that his counsel was ineffective for failing to object to several instances of prosecutorial misconduct. We disagree.
 {¶ 47} When examining alleged prosecutorial misconduct this Court must determine whether the remarks are improper, and if so, whether they prejudicially affected Appellant's substantial rights. State v. Lott (1990), 51 Ohio St.3d 160, 165. Appellant asserts that the State improperly commented on a crime that was unrelated to the crimes for which Appellant was on trial; improperly commented on the compensation his witness received; and improperly commented on Appellant's character. We find that the State engaged in no improper conduct.
 {¶ 48} A review of the record demonstrates that the State used the analogy of a drive-by shooting to demonstrate the rationale of the doctrine of transferred intent. Accordingly, the State utilized an analogy to demonstrate to the jury a technical legal concept. Nothing about the State's use of such an analogy was improper, nor did the State attempt to attribute such a crime to Appellant.
 {¶ 49} Appellant further asserts that the State committed misconduct by stating that Dr. Shulman was paid for his testimony and had an interest in the outcome of the case. Initially, we note that the State never commented that Dr. Shulman had an interest in the outcome of the case. Rather, the prosecution commented on the evidence, pointing out that Dr. Shulman was paid for his testimony and had always testified on behalf of the defense. Appellant has cited no authority and this Court has no authority that would make such commentary improper.
 {¶ 50} Finally, Appellant asserts that the prosecutor engaged in misconduct when he discussed Appellant's flight from the jurisdiction. Again, however, the evidence supports the statements made by the prosecution. As noted above, the State produced evidence that Appellant fled the jurisdiction following the crime. Accordingly, the prosecutor commented on the evidence before the jury and his actions were not in any manner improper.
 {¶ 51} Having found that the State did not engage in any misconduct, we find that Appellant's counsel was not ineffective for failing to object to the above comments. Furthermore, as we have found no merit in Appellant's other contentions regarding his counsel, Appellant has failed to demonstrate that his trial counsel was deficient. Strickland, 466 U.S. at 687. Accordingly, Appellant's seventh assignment of error is overruled.
 III. {¶ 52} Appellant's seven assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J. Boyle, J. concur