[Cite as *State v. Jackson*, 2012-Ohio-3524.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

JOHNNY JACKSON, III

    Appellant

C.A. No.    11CA010012

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CR079758

DECISION AND JOURNAL ENTRY

Dated: August 6, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Nyketta Terrell identified Johnny Jackson as one of three men who stole electronic equipment from her apartment after smoking marijuana with her early one morning while her husband was working. This Court affirms because Mr. Jackson did not preserve his speedy trial argument for appeal, his convictions are not against the manifest weight of the evidence, there was sufficient evidence of flight to allow the trial court to instruct the jury on that issue, and Mr. Jackson has not demonstrated that it was plain error for the trial court to instruct the jury that any verdict must be unanimous.

BACKGROUND

{¶2} Ms. Terrell testified that a knock at her door roused her from sleep near 8:00 a.m. on January 9, 2010. When she answered the door, she saw Wyatt Menges (an old friend) and two other men. Mr. Menges asked if he and the others could come inside and smoke a blunt with

her. She described a blunt as a cigar leaf filled with marijuana. Ms. Terrell testified that she was vaguely familiar with the second young man because he is related to her cousin. The second young man, T.J., was a juvenile at the time of the crime. Ms. Terrell testified that she had never met the third man, but Mr. Menges introduced him as Johnny. Ms. Terrell invited the men into her living room and they shared a blunt while playing videogames. She said that the men were there for about an hour when things got tense because she confronted Mr. Menges about whether he had burglarized the house of a friend of hers. The men left Ms. Terrell's house around 9:00 a.m.

{¶3} According to Ms. Terrell, twenty minutes after the men left her house, T.J. and Johnny knocked on her door and told her that T.J. had forgotten his cell phone. She said that she asked the men to wait outside the door and handed them her cell phone so that they could dial the missing phone while she turned to look around her couch. The next thing she knew, Johnny pulled a gun on her and told her to get down on the floor. He threatened to shoot her if she looked up, so she kept her face to the floor while she listened to the sounds of other men coming in and out of her apartment stealing electronic equipment such as her television set, Nintendo Wii, PlayStation, and games. She said that Johnny kept his knee on her back and the gun to the back of her head while he ordered the other men around, giving directions about how to disassemble certain items. When they were finished, Johnny told her to get into a nearby closet and not to come out until after they were gone. She said she waited about twenty minutes before running outside in her pajamas to find a phone to call the police.

{¶4} Immediately after the crime, Ms. Terrell did not admit to police that she had first permitted the men to enter her apartment to smoke marijuana. But, after one of the officers told her that he smelled marijuana in her apartment, she admitted that she had shared a blunt with the

men earlier that morning. Although she was able to name two of the men and identify photos of them on an officer's laptop computer at the scene, she was initially only able to describe the third man as a short and skinny though muscular, bi-racial, light-skinned man with tattoos and cornrow braids. A couple of hours later, she went to the police station to file a report and officers told her to call them later if she recalled anything else. Later that day, Ms. Terrell called Officer Gregg Drake to report that she recalled that, when Mr. Menges first brought his friends into her home, he had introduced the third man as Johnny. She also testified that she remembered that Mr. Menges had previously talked about a young man named Johnny who sometimes stayed at Mr. Menges' grandmother's house and was like a brother to him.

{¶5} Officer Drake testified that, based on Ms. Terrell's description, he suspected the third man might have been the defendant, Johnny Jackson, because he matched the description Ms. Terrell had given and was known to associate with the other two suspects. Based on that suspicion, he created a photo array, and Ms. Terrell chose the picture of Johnny Jackson without hesitation. Officer Jacob Webber testified that he went to Mr. Menges' grandmother's house to serve a warrant for his arrest, but did not find Mr. Jackson there. He did, however, find T.J., along with Johnny Jackson's brother, Quentin Jackson. Officer Drake testified that he soon learned that Johnny Jackson had gone to Georgia. The evidence showed that authorities arrested Mr. Jackson in Strafford County, Georgia, on February 15, 2010.

{¶6} A jury found Mr. Jackson guilty of two counts of aggravated burglary, one count of aggravated robbery, one count of kidnapping, and multiple firearm specifications under Sections 2941.14.1 and 2941.14.5 of the Ohio Revised Code. The aggravated burglary charges merged into the aggravated robbery charge. The trial court sentenced Mr. Jackson to serve eight years in prison plus three consecutive years for the gun specification for aggravated robbery and

three years in prison plus a consecutive three years for the gun specification for kidnapping. The trial court ordered the prison sentences on the substantive charges to run consecutive to one another and the sentences for the gun specifications to run concurrent with one another, but consecutive to those served for the underlying offenses, for a total of 14 years. He has appealed his convictions.

## SPEEDY TRIAL

{¶7} Mr. Jackson's second assignment of error is that his speedy trial rights were violated because he was tried a year after his arrest on these charges. He has specifically argued that he did not waive his speedy trial time knowingly and intelligently and he never waived it regarding the gun specifications that were added after he withdrew his guilty plea.

{¶8} "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the State of Ohio." *State v. Pachay*, 64 Ohio St. 2d 218, 219 (1980). There is also a statutory right to a speedy trial in Ohio. "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). Under Section 2945.71(C)(2) of the Ohio Revised Code, a person charged with a felony must be brought to trial within 270 days of his arrest.

{¶9} Although the docket reflects that Mr. Jackson was tried more than a year after his arrest on the original indictment in this case, it also indicates a number of tolling events, including various motions and a successful withdrawal of a guilty plea. The ability of any court to compute the speedy trial time in this case would be hampered by the fact that multiple relevant documents are missing from the record. This Court cannot address the argument, however, because Mr. Jackson did not preserve this issue for appeal.

{¶10} Mr. Jackson did not move the trial court to dismiss the charges based on a violation of his speedy trial rights. *See State v. Turner*, 168 Ohio App. 3d 176, 2006-Ohio-3786, ¶ 21-22 (5th Dist.). Although his court-appointed lawyer raised the topic of speedy trial in open court just before trial began on February 23, 2011, the lawyer did not move the trial court to dismiss the charges on that basis. In fact, the lawyer informed the trial court that, although Mr. Jackson "believes that the case is out of time for speedy trial purposes," he did not agree with his client. The lawyer told the court that he did not believe there was a violation of Mr. Jackson's speedy trial rights "due to the fact [that] motions . . . were filed . . . for his defense, and also his withdraw[al] of his original plea, and the time tolling during that . . . . He was capias for a period of time as well." Thus, the trial court did not have an opportunity to rule on this issue. *See*, *e.g.*, *State v. Taylor*, 6th Dist. No. L-98-1375, 2001 WL 1198648, *1 (Oct. 5, 2001). Mr. Jackson's second assignment of error is overruled.

## MANIFEST WEIGHT

{¶11} Mr. Jackson's first assignment of error is that his convictions are against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

{¶12} Mr. Jackson has argued that this was a case of mistaken identity. He has pointed to evidence that Ms. Terrell had never before met the man who held a gun on her that morning, none of Mr. Jackson's fingerprints were found at the scene, and no gun was ever located. Ms.

Terrell initially described the third man to police as a biracial man with cornrows, but Mr. Jackson did not have cornrows in the picture Ms. Terrell chose from the photo array. Further, although Ms. Terrell was immediately able to name one man and give police a partial name and family relationship to identify the second man, she did not tell them that the third man's name was Johnny until after her formal interview at the police station. Additionally, Ms. Terrell testified that she was "buzzing" that morning due to smoking marijuana with the three men before the crime occurred.

{¶13} According to Ms. Terrell's testimony, she spent an hour socializing with the three men just twenty minutes before they returned to commit the crime. She testified that she was "pretty sure" that the photo she chose from the array depicted the man who held a gun on her that morning, and Officer Drake testified that she chose the picture without hesitation. The evidence showed that Ms. Terrell did not recall the third man's name until after she had returned home and calmed down after her interview at the police station. She testified that, in addition to recalling the name Johnny, she also later recalled that Mr. Menges used to talk about a young man named Johnny who was like a brother to him. Although she testified that she was "buzzing" after they shared the blunt, she said that she was still aware of her surroundings and she was no longer buzzing when the men returned. Officer Drake also testified that Ms. Terrell did not appear high when he arrived at the scene following her 911 call. Having reviewed the record, we conclude that the jury did not lose its way when it determined that Mr. Jackson was one of the three men who burglarized Ms. Terrell's home. Mr. Jackson's first assignment of error is overruled.

JURY INSTRUCTION REGARDING FLIGHT

{¶14} Mr. Jackson's third assignment of error is that the trial court incorrectly instructed the jury that evidence of flight can be indicative of consciousness of guilt because there was no

evidence of flight presented at trial. The State has responded by arguing that the instruction was warranted based on two pieces of evidence. First, police located Mr. Jackson in Georgia following the issuance of his arrest warrant. Second, police testimony and booking photos demonstrate that Mr. Jackson altered his appearance before trial.

{¶15} Evidence of an accused's flight is admissible as evidence of consciousness of guilt. *State v. Williams*, 79 Ohio St. 3d 1, 11 (1997). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] . . . instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Feterle v. Huettner*, 28 Ohio St. 2d 54, syllabus (1971). The Ohio Supreme Court has explained that the appropriate test for a court of appeals to apply to this question is "the same as that faced by a trial court called upon to decide a motion for a directed verdict." *Id.* at 56.

{¶16} As seen in the booking photos from Georgia and Lorain County following his arrest and extradition to Ohio, Mr. Jackson's long hair may have been his most noticeable physical feature at the time of the alleged crime. Officer Drake testified that he had known Mr. Jackson before he became a suspect in this investigation and knew that Mr. Jackson usually wore his long hair "out pretty big" in an afro style, pulled back into a tie at the back of his neck, or braided into tight cornrows. By contrast, by the time of trial, Mr. Jackson's hair was cut short, "[a]bsolutely" altering his appearance. The timing of the hair cut, however, undercuts the State's argument. Evidence that Mr. Jackson cut his hair short sometime between being arrested and being tried is not evidence of flight because it does not constitute evidence of an attempt to avoid apprehension.

{¶17} Thus, the evidence of flight presented at trial was limited to Officer Drake's testimony that he learned that Mr. Jackson had gone to Georgia shortly after the crime. The evidence also indicated that authorities in Strafford County, Georgia, arrested Mr. Jackson on February 15, 2010. This case is similar to one decided by this Court in 2006. In *State v. Villa*, 9th Dist. No. 05008773, 2006-Ohio-4529, ¶ 31, this Court affirmed the trial court's decision to give a flight instruction based on evidence that authorities sought the defendant for questioning within a day of the crime, but were unable to locate him in Lorain County. Several weeks later, he was arrested in Florida.

{¶18} In this case, there was sufficient evidence to allow a reasonable inference that Mr. Jackson left the state shortly after the crime in order to avoid apprehension. The jury instruction appropriately permitted, but did not require, the jury to draw the conclusion that Mr. Jackson's actions after the crime demonstrated a consciousness of guilt. His third assignment of error is overruled.

JURY INSTRUCTION REGARDING UNANIMOUS VERDICT

{¶19} Mr. Jackson's fourth assignment of error is that the trial court incorrectly instructed the jury that its verdict must be unanimous. He has argued that the instruction eliminated the possibility of a hung jury. The trial court told the jury that "whenever all 12, I repeat, all 12 jurors agree upon a verdict, you will sign that verdict in ink and advise the bailiff . . . . You as jurors must be unanimous as to your verdict on each count of the indictment and each specification." Because Mr. Jackson did not object to the instruction at trial, for the purposes of appeal, he has forfeited any argument except that of plain error. *State v. Lynn*, 129 Ohio St. 3d 146, 2011-Ohio-2722, ¶ 12.

**{¶20}** Mr. Jackson's only argument in regard to this instruction is that it has a tendency to lead a jury to believe that disagreement among the jurors is not permissible. Courts must review the jury instructions as a whole to determine whether, "taken in their entirety, the instructions fairly and correctly state the law[.]" *State v. Wilkins*, 9th Dist. No. 25626, 2012-Ohio-459, ¶ 9 (quoting *State v. Horne*, 9th Dist. No. 24672, 2010-Ohio-350, at ¶ 19). "[R]eversible error will not be found merely on the possibility that the jury may have been misled." *Id.* (quoting *Horne*, 2010-Ohio-350, at ¶ 19).

**{¶21}** The trial court's instruction correctly states the law. Rule 31(A) of the Ohio Rules of Criminal Procedure requires a unanimous verdict that must be in writing and signed by all jurors. A review of the context of the instruction indicates that the trial court also advised the jurors not to compromise their own judgment in order to reach a verdict. The trial court told the jury "to consult with one another, consider each other's views and deliberate with the objective of reaching an agreement, if you can do so without disturbing your own individual conscience and judgment. Each of you must decide the case for yourself, but you should do so only after discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if after discussion you are convinced that it is wrong. However, you should not surrender an honest conviction in your own mind in order to be friendly or congenial or to reach a verdict solely because of the opinion of other jurors." Mr. Jackson's fourth assignment of error is overruled because he has not demonstrated that it was plain error for the trial court to instruct the jury regarding a unanimous verdict.

## CONCLUSION

**{¶22}** Mr. Jackson's first assignment of error is overruled because his convictions are not against the manifest weight of the evidence. His second assignment of error is overruled

because he did not properly preserve his speedy trial argument for appeal. His third assignment of error is overruled because the State presented sufficient evidence of flight to allow the trial court to instruct the jury on that issue. His fourth assignment of error is overruled because Mr. Jackson has not demonstrated that it was plain error for the trial court to instruct the jury that any verdict must be unanimous. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.