JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This case arises from the murder of 18-year-old Verena Davis by defendant-appellant, Gregory Walker, on June 1, 2005. Davis and several friends had spent the afternoon riding around with Walker in his "shiny, nice truck." Davis and Walker began arguing, however, when Walker refused to take her to pick up dinner from a take-out restaurant. Davis got out of the truck, spit on it, ripped its license plate cover off, and walked away. Walker then got out of his truck, pulled a gun from his left pocket, and shot Davis in the head. That night, he called a friend and told him, "I just had to pop this ho."
 {¶ 2} The jury convicted Walker of murder, in violation of R.C.2903.02, with firearm specifications, and having a weapon while under disability, in violation of R.C. 2923.13. He now appeals his conviction. We affirm.
1. Defense Counsel's Motion to Withdraw {¶ 3} On the morning of trial, defense counsel, who was appointed, advised the court that he had learned the day before from Walker's mother that Gary Walker, appellant's twin brother, had threatened to kill her and any witnesses who testified against his brother. Gary Walker also threatened that he would "take care" of defense counsel if he did not "come up with some kind of defense" for his brother. Appellant's mother told defense counsel that a witness in the case had already been murdered and several people at the funeral wore tee-shirts that said, "Snitches Get God." *Page 4 
 {¶ 4} Defense counsel advised the court that he had "no doubt" that Gary Walker had, in fact, threatened witnesses, but that Gary had been polite and unthreatening when he met with him that morning prior to trial. Defense counsel further advised the court he was "a little bit concerned" about representing appellant because of the threats and that appellant had advised him that morning that he wanted a new lawyer.
 {¶ 5} The trial judge then questioned appellant, who told the judge that he believed defense counsel could not adequately represent him because he had not given him copies of discovery in the case and had tried to get him to plead guilty, despite his innocence. Defense counsel told the judge that he had met with appellant several times to discuss the case, but admitted that he had not given appellant copies of discovery until that morning. Defense counsel urged the court to release him from the case because appellant was "adamant" that he wanted new counsel.
 {¶ 6} The trial judge then questioned the prosecutor, who told the judge that he and defense counsel had met at least 20 times, either in formal pretrials or informally, to discuss the case and exchange discovery and that defense counsel had been diligent in inquiring about evidence in the case.
 {¶ 7} The court then noted that defense counsel was a well-regarded criminal defense lawyer, much work had already been done on the case, and appellant could have requested a new lawyer much sooner than the day of trial. Attributing *Page 5 
appellant's request for a new lawyer to "pretrial panic," the judge stated that he did not want to inconvenience the witnesses or subject them to harm while waiting for trial to go forward and, therefore, he denied defense counsel's motion to withdraw. When the judge asked if there were any other issues to be discussed prior to trial, defense counsel attempted to continue arguing about his motion to withdraw, but the judge told him to address only "new" issues.
 {¶ 8} In his first assignment of error, appellant contends that the trial court erred in denying counsel's motion to withdraw. In his second assignment of error, appellant contends that he was denied his Sixth Amendment right to counsel because the trial court refused to appoint new counsel for him, despite counsel's unwillingness to represent him.
 {¶ 9} "`An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate `good cause' to warrant substitution of counsel.' `The trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable.' The trial court's decision is reviewed under an abuse of discretion standard."State v. Cowans (1999), 87 Ohio St.3d 68, 72-73, quoting United Statesv. Iles (C.A. 6, 1990), 906 F.2d 1122, 1130, and State v. Deal (1969),17 Ohio St.2d 17, syllabus.
 {¶ 10} We find no abuse of discretion here. Contrary to appellant's assertion, *Page 6 
counsel did not tell the court that he could not represent appellant because he was afraid for his life. Although counsel told the court, "I don't want to try a case watching my back," he also told the court that threats had been made against him before, and he was more concerned about the threats against the witnesses.
 {¶ 11} Also contrary to appellant's assertion, defense counsel did not tell the court that the attorney/client relationship was so broken that he could not represent appellant. Rather, he told the court that after appellant had questioned him that morning about his preparation for trial and told him that he wanted new counsel, "I said I'd advise the judge and I left it at that."
 {¶ 12} A breakdown in the attorney/client relationship will warrant substitution of counsel if the breakdown is so severe as to jeopardize the defendant's right to effective assistance of counsel. State v.Coleman (1988), 37 Ohio St.3d 286, 292. Appellant's "pretrial panic" about whether his attorney had done enough to prepare for trial is not sufficient to demonstrate such a breakdown in the attorney/client relationship.
 {¶ 13} Likewise, appellant was not denied his Sixth Amendment right to counsel because the trial court refused to appoint new counsel for him. Despite appellant's argument to the contrary, we find nothing in the record to indicate that defense counsel was not willing to represent appellant. In fact, the record indicates that defense counsel worked diligently on appellant's behalf before and during trial. The record further demonstrates that defense counsel moved to withdraw only upon *Page 7 
appellant's insistence that he do so, not because he was unwilling to represent appellant.
 {¶ 14} Finally, the record does not support appellant's argument that the trial court did not allow him or his attorney to give their reasons for terminating the attorney/client relationship on the record. The record demonstrates that the trial judge gave defense counsel, the prosecutor, and appellant an opportunity to speak before rendering his decision. The trial court's denial of appellant's and defense counsel's attempts to further argue the motion after it was denied was not an abuse of discretion.
 {¶ 15} Appellant's first and second assignments of error are overruled.
2. "Other Acts" Testimony {¶ 16} In his third assignment of error, appellant contends that he was prejudiced by the admission of irrelevant and inflammatory evidence of "other acts."
 {¶ 17} Under Evid.R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The danger in eliciting "other acts" testimony at trial is that "the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crimes charged in the indictment." State v.Cotton (1996), 113 Ohio App.3d 125, 131. Thus, "it is a well-established rule of evidence that the *Page 8 
prosecution in a criminal trial may not present evidence that a defendant has committed other crimes, wrongs or actsindependent of the offense for which he is on trial in order to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts." State v. Davis (1989),64 Ohio App.3d 334, 339. (Emphasis in original.)
 {¶ 18} While evidence of other acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).
 {¶ 19} In a criminal case in which a defendant-appellant alleges that it was reversible error to allow the trier of fact to hear certain testimony, the reviewing court must first determine if it was error to allow the trier of fact to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Benton, 8[th] Dist. No. 82810, at T|42, citing State v. Davis (1975), 44 Ohio App.2d 335, paragraph three of the syllabus.
 {¶ 20} Appellant contends that the State improperly showed the jurors pictures of him brandishing a gun and flashing gang signs. Appellant, pro se, raises the same argument regarding the photographs in his "pro se supplement to appellant's brief."
 {¶ 21} In addition, appellant contends that testimony that 1) on the day of the murder, he and a friend planned to rob a drug dealer; 2) he kept his truck registered *Page 9 
in a different name so he could run from the police if he was pulled over; 3) on the day of the murder, he pointed to his gun and threatened his friend's girlfriend; 4) he owned several guns; and 5) he had previously shot a "big-time" drug dealer, was inadmissible "other acts" testimony.
 {¶ 22} The record demonstrates that the photographs were relevant to identification. The sole issue at trial was who committed the homicide. Some of photographs showed appellant's unique tattoo on the right side of his face. In addition, several witnesses identified the firearm in the photographs as the same one appellant used to murder Verena Davis. Furthermore, Wade White, a lifetime associate of appellant's, identified the time frame depicted in the photographs from the background scenery as Spring/Summer 2005.
 {¶ 23} With respect to the testimony that appellant objects to, we find that none of the testimony is even arguably related to any of the exceptions noted in Evid.R. 404(B). Indeed, the State does not even attempt to relate any of the objectionable testimony to any exception; it merely asserts that the evidence was admissible in light of the trial court's discretion on evidentiary rulings.
 {¶ 24} Despite the State's lack of argument upon this issue, we must nonetheless consider whether the introduction of this improper evidence materially prejudiced the case and affected appellant's right to a fair trial. We conclude that it did not. In light of the other overwhelming evidence in the record regarding appellant's guilt, we find no prejudice to appellant from its admission. Five *Page 10 
witnesses testified that they saw appellant purposely shoot Verena Davis. On this record, it is apparent that even without the "other acts" testimony, the jury would have found evidence that proved beyond a reasonable doubt that appellant was guilty of murder.
 {¶ 25} Appellant's third assignment of error is therefore overruled.
 {¶ 26} Appellant's pro se assignment of error is also overruled.
3. Evidence that Walker Acted "Purposely" {¶ 27} In his fourth assignment of error, appellant contends that the evidence was insufficient to support his conviction for murder because the State failed to adduce evidence that he intended to kill Verena Davis. In his fifth assignment of error, appellant contends, for the same reason, that his conviction was against the manifest weight of the evidence.
 {¶ 28} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 29} While the test for sufficiency requires a determination of whether the *Page 11 
State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering a manifest weight challenge, a reviewing court examines the entire record, weighing the evidence and considering the credibility of witnesses.State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the jury, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, at 387. Reversing a conviction as being against the manifest weight of the evidence is reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Id. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Id. at 388; State v. Roberts (Sept. 17, 1997), 9[th] Dist. No. 96CA006462.
 {¶ 30} R.C. 2903.02(A), which prohibits murder, provides that "no person shall purposely cause the death of another * * *." A person acts purposely when it is his specific intention to cause a certain result or he engages in conduct that will cause that result. See R.C. 2901.22(A).
 {¶ 31} Here, there was ample evidence to show that appellant intended to kill Verena Davis. Five witnesses testified that they saw appellant shoot Davis. The evidence further demonstrated that while he was riding around with Davis and her friends that afternoon, appellant took his handgun out of his pocket and told Davis *Page 12 
that he was checking it to make sure the safety was on. Thus, the jury could have reasonably inferred that before shooting Davis only a few hours later, appellant purposely removed the safety. The evidence also indicated that while he was arguing with Davis, appellant reached down and touched his gun, apparently to threaten her. Furthermore, the evidence demonstrated that as Davis was walking away from his truck, appellant got out of his truck, pulled his gun out, "pointed it at her and pulled the trigger. Wasn't no hesitation." After he shot Davis, appellant "took his time" leaving the scene. "He put his hand down and, you know, went and picked something up and got in the [truck] and pulled off. I noticed he didn't pull off like trying to run away." Finally, later that evening, appellant called a friend and told him, "I just had to pop that ho."
 {¶ 32} We are unpersuaded by appellant's argument that this evidence is insufficient to demonstrate that he acted purposely in killing Verena Davis. "An intent to kill may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound."State v. Robinson (1954), 161 Ohio St. 213, paragraph five of the syllabus. "A firearm is an inherently dangerous instrumentality, the use of which is likely to produce death." State v. Seiber (1990),56 Ohio St.3d 4, 14. *Page 13 
 {¶ 33} Here, the evidence overwhelmingly demonstrates that appellant purposely shot Verena Davis in broad daylight as she was walking away from him. We find nothing in the record to indicate the jury lost its way in convicting appellant of murder.
 {¶ 34} Appellant's fourth and fifth assignments of error are therefore overruled.
4. Speedy Trial {¶ 35} In his sixth assignment of error, appellant contends that he was denied his right to a speedy trial when his trial failed to commence by September 8, 2005, the 90[th] day after his arrest on June 7, 2005. Appellant did not raise this issue below and thus has waived all but plain error. State v. Hooks, 92 Ohio St.3d 83, 2001-Ohio-150.
 {¶ 36} Under R.C. 2945.71, an incarcerated defendant must be brought to trial on a felony charge against him within 90 days of his arrest. The 90-day period is extended by any period in which the defendant is unavailable for trial because of other criminal proceedings against him. R.C. 2945.72(A).
 {¶ 37} During his arrest on June 7, 2005, in Cincinnati, Ohio, appellant attempted to escape from the police by crawling through the bathroom ceiling of an apartment into an adjacent apartment. He was eventually apprehended in a third apartment. As a result, he was charged and prosecuted in Hamilton County with two counts of aggravated burglary. Appellant was unavailable for trial in Cuyahoga County following his arrest due to the criminal proceedings against him in Hamilton *Page 14 
County. During that time, his speedy trial time was extended by statute.
 {¶ 38} Appellant was returned to Cuyahoga County on December 2, 2005 and arraigned on December 5, 2005, after the Hamilton County criminal proceedings concluded; he was brought to trial on February 21, 2006. We find no violation of his right to a speedy trial.
 {¶ 39} Appellant's sixth assignment of error is overruled.
5. Jury Instruction on Manslaughter {¶ 40} In his eighth assignment of error, appellant contends that the trial court erred in not instructing the jury on the offense of manslaughter.
 {¶ 41} Appellant did not object to the jury instructions and thus has waived any alleged error unless it amounts to plain error. State v.Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ?56, citing State v.Underwood (1983), 3 Ohio St.3d 12, at the syllabus. There is no plain error here because the evidence did not warrant such an instruction.
 {¶ 42} Voluntary manslaughter is an inferior degree of murder.State v. Rhodes (1992), 63 Ohio St.3d 613, 617. Under R.C. 2903.03, the jury must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence that he killed the victim while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation by the *Page 15 
victim sufficient to incite the defendant to use deadly force. Id. Thus, a defendant on trial for murder is entitled to an instruction on voluntary manslaughter if he has produced evidence of either sudden passion or sudden rage brought on by serious provocation by the victim sufficient to incite the defendant to use deadly force. Id.
 {¶ 43} Here, there was insufficient evidence of provocation by the victim to incite appellant to kill her. Although appellant contends he was provoked, the record demonstrates that before appellant shot Verena Davis, she argued with him, spit on his truck, and ripped the license plate cover off. Such provocation is hardly sufficient to incite anyone to use deadly force.
 {¶ 44} Because an instruction on voluntary manslaughter was neither requested nor warranted, appellant's eighth assignment of error is overruled.
6. Witness Statements {¶ 45} Crim.R. 16(B)(1)(g) provides for an camera inspection by the court, prosecutor, and defense counsel, of a witness's out-of-court written or recorded statement, to determine, for purposes of cross-examination, whether there are any inconsistencies between the witness's testimony upon direct examination and his or her statement. The rule further provides that "whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 46} In his ninth assignment of error, appellant contends that the trial court committed reversible error in not impounding any witness statements for appeal. We
find no error.
 {¶ 47} The record reflects that the trial court gave defense counsel an opportunity to inspect the statements of all witnesses who had given written out-of-court statements.[1] Defense counsel reviewed the statements and then stated that he declined their use for cross-examination. Having given defense counsel an opportunity to review the statements in their entirety, there was no requirement that the trial court preserve the statements in the record.
 {¶ 48} Appellant's citations to State v. Daniels (1982),1 Ohio St.3d 69, and State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, are not helpful to his argument. In Daniels, the trial court reviewed the witness's statement and, upon determining there were no inconsistencies, denied defense counsel's request to review the statement. The Ohio Supreme Court held that under Crim.R. 16(B)(1)(g), once the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties must be given the opportunity to inspect the statement personally. The trial court did exactly that in this case. In Cunningham, the Ohio Supreme Court specifically noted that Crim.R. 16(B)(1)(g) "requires the trial court to preserve the statement for appellate review if any part of the witnessstatement is not given to defense counsel." (Emphasis added.) Here, the trial court *Page 16 
gave defense counsel the statements in their entirety and, therefore, was not required to preserve the statements for appellate review.
 {¶ 49} Appellant's ninth assignment of error is overruled.
7. Ineffective Assistance of Counsel {¶ 50} Appellant's seventh assignment of error asserts that he was denied effective assistance of counsel because defense counsel failed to assert a speedy trial violation and object to "other acts" testimony, and continued to represent him even though he was "conflicted" and feared for his own safety.
 {¶ 51} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, at ?205, citing Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 694.
 {¶ 52} In light of our resolution of appellant's other assignments of error, appellant's ineffective assistance of counsel claim necessarily fails. As discussed above, there was no speedy trial violation; appellant was not prejudiced by the admission of the "other acts" testimony; and defense counsel moved to withdraw
only upon appellant's insistence that he do so, not because he was "conflicted" about representing appellant or feared for his safety. Accordingly, appellant was not prejudiced by counsel's performance.
 {¶ 53} Appellant's seventh assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR
[1] Appellant's assertion that the trial court "flat-out refused" to let defense counsel review Jessica Short's statement is wrong. The record demonstrates that although Short spoke with the police, she did not give either a written or recorded statement. *Page 1