JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} In this delayed appeal, defendant Joey Bullock appeals from his convictions for rape, gross sexual imposition, and kidnapping with a sexual motivation specification. For the reasons set forth below, we reverse and remand for further proceedings.
 {¶ 2} On March 29, 2005, defendant was indicted pursuant to an eight-count indictment in connection with an alleged assault on F.D.[1] The indictment was later amended to set forth four charges: amended Counts One alleged that defendant forcibly raped F.D.; amended Count Two alleged that defendant engaged in sexual conduct with F.D. knowing that she had an impaired ability to resist or consent; amended Count Three charged defendant with gross sexual imposition; and amended Count Four charged him with kidnapping with a sexual motivation specification. Defendant pled not guilty and the matter proceeded to a jury trial on April 18, 2006.
 {¶ 3} The state's evidence indicated that F.D. has been diagnosed with mental retardation, is deaf in her right ear and wears a hearing aid in her left ear. According to F.D., in November 2004, while she was living with her cousins Aishah McCoy and Francesca Linder, McCoy returned to the apartment with defendant just as F.D. was getting out of the shower. F.D. put a sheet around herself and let them into the apartment. She and defendant then discussed their distant family *Page 3 
relationship and various family members. Defendant and F.D. subsequently decided to visit the woman's mother and defendant also agreed to drive Linder to her grandmother's house. Defendant dropped Linder off first. He then told F.D. that he was going to rape her. F.D. laughed off the comment and they continued to ride around. They returned briefly to Aishah's house and defendant said that he wanted to see "how bad" the woman was. He touched her and asked if she could be his girlfriend and said that they were not blood relatives. F.D. further testified that defendant's demeanor began to change and that she was afraid.
 {¶ 4} Defendant then drove the woman to his cousin's vacant house. He continued to talk to her in a provocative way but she did not pay attention and determined that she simply wanted to return home safely. Defendant let himself into the home then let the woman inside. She touched numerous items in order to create evidence of her presence. They "tussled" and she made her way to the front door. Defendant then held her down and began to remove her pants. The woman stated that she fought defendant but he "slammed" her and said that he was going to hurt her. He forced her shirt and bra off and sucked her breast then removed her pants then forcibly engaged in intercourse with her.
 {¶ 5} As they left the house, defendant repeatedly asked the woman not to tell. He began coughing up blood and had her drive them back to her apartment. F.D. drew a bath and attempted to drown herself. Aishah heard a commotion in the bathroom, and asked the woman what was wrong. After a couple of hours, the *Page 4 
woman told Aishah that defendant had raped her. Approximately one week later, the woman went to the hospital and then made a statement to police.
 {¶ 6} Chad Britton, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that he received for analysis three items belonging to F.D. and a standard submitted by defendant. According to Britton, semen was found on F.D.'s jeans, and a presumptive test indicated the presence of blood.
 {¶ 7} Cleveland Police Det. Alan Strickler of the Sex Crimes Unit testified that he interviewed F.D. on December 2, 2004, and took a written statement from her. He took a second written statement on December 5, 2004 and a third on December 9, 2004. Strickler indicated that he spoke to the woman approximately ten times, and also spoke to McCoy, Linder, and defendant. Defendant's statement was read into the record and indicated, essentially, that he and the woman had engaged in consensual sex at the vacant home, that he was embarassed about the matter because of their distant family relationship and that he took prearranged trips to Indiana and Alabama following the incident. He believed that the woman had become upset with him for not including her in his travel plans.
 {¶ 8} Aishah McCoy testified that defendant had lectured the women about proper living and indicated that he and F.D. were going to F.D.'s mother's house in order to counsel her about her drug use. F.D. returned home at approximately 1:00 a.m. the following morning and her face and hand appeared swollen. She asked *Page 5 
F.D. what was wrong and F.D. pushed past her and went into the bathroom. McCoy later heard F.D. screaming, and F.D. told her that defendant had raped her.
 {¶ 9} Defendant rested without presenting evidence and was subsequently convicted of the forcible rape charge, gross sexual imposition, and kidnapping with a sexual motivation specification. He now appeals, assigning four errors for our review. Because the second assignment of error is dispositive, we shall address the assignments of error out of their predesignated order.
 {¶ 10} Defendant's second assignment of error states:
 {¶ 11} "The trial court erred when it refused to allow the defense to inspect and participate in the review of the state's witness' statements prior to conducting cross-examination."
 {¶ 12} In this assignment of error, defendant complains that he was permitted to personally inspect only one of the three statements which F.D. made to police and that the other statements, which were reviewed by the court, were not included within the record of this matter. The state acknowledges that defendant reviewed one of the statements while the court reviewed the other two for inconsistencies and also acknowledges that the other statements were not included in the record, but the state maintains that defense counsel breached its duty to ensure that the statements were part of the record. We do not agree.
 {¶ 13} Crim. R. 16(B)(1)(g) provides:
 {¶ 14} "Upon completion of a witness' direct examination at trial, the court on *Page 6 
motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 15} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 {¶ 16} "If the court determines that inconsistencies do not exist, the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 {¶ 17} "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 18} In State v. Cunningham, 105 Ohio St. 3d 197, 2004-Ohio-7007,824 N.E.2d 504, the Supreme Court noted that the "present and participating" provision in Crim.R. 16(B)(1)(g) requires that attorneys for all parties be given the opportunity to "(1) inspect the statement personally; and (2) call to the court's attention any perceived inconsistencies between the testimony of the witness and the prior statement." The Court also noted that the last section of Crim.R. 16(B)(1)(g), requires the trial court to preserve the statement for appellate review if any part of the witness' statement is not given to defense counsel. Accord State v. Gray, *Page 7 
Cuyahoga App. No. 82045, 2003-Ohio-4670; State v. Walker, Cuyahoga App. No. 87968, 2007-Ohio-3772; State v. Fields (Dec.31, 1997), Delaware App. No. 95CAA-08-048.
 {¶ 19} In this matter the record indicates that, following the testimony of F.D., counsel for defendant asked to inspect all three of her statements. The trial court then indicated that one statement was provided to him, that the trial court read the other two and found no inconsistencies and "accordingly did not provide them to defense counsel." (Tr. 364.)
 {¶ 20} The record further demonstrates that defendant's counsel was not permitted to inspect McCoy's statement. (Tr. 488.) Neither F.D.'s statements nor McCoy's statements have been provided to this court.
 {¶ 21} Accordingly, the record clearly establishes that the trial court did not permit defendant's trial counsel to personally inspect the statements, and that the trial court failed to ensure that the statements were preserved for appellate review, as required in accordance with Crim. R. 16. We are therefore compelled to reverse this matter and remand for further proceedings.
 {¶ 22} The remaining assignments of error[2] are accordingly moot. App.R. 12(A).
 {¶ 23} This cause is reversed and remanded to the lower court for further *Page 8 
proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] It is the policy of this court to exclude the names of victims of alleged sexual assaults.
[2] The remaining assignments of error present challenges to jury selection, the prosecuting attorney's closing argument, and the manifest weight of the evidence. *Page 1